# *Public Broadcasting Act of 1967 (with Amendments),* Pub. L. No. 90-129, 47 U.S.C. § 396 (1967)

(Creation of the Corporation for Public Broadcasting, Providing New Regulation and Funds for Educational Radio and Television Broadcast Facilities)

Case: 1:10-cv-07003 Document #: 45-5 Filed: 07/06/11 Page 2 of 15 PageID #:375

the administration of the Secretary's functions under this subpart which are of interest to or affect the functions of the Corporation.

### (k) Authorization of appropriations

There are authorized to be appropriated $1,000,000 for each of the fiscal years 1979, 1980, and 1981, to be used by the Secretary to carry out the provisions of this subpart. Sums appropriated under this subsection for any fiscal year shall remain available for payment of grants or contracts for projects for which applications approved under this subpart have been submitted within one year after the last day of such fiscal year.

(June 19, 1934, ch. 652, title III, § 395, as added Pub. L. 95–567, title II, § 201, Nov. 2, 1978, 92 Stat. 2409.)

#### PRIOR PROVISIONS

A prior section 395, act June 19, 1934, ch. 652, title III, § 395, as added May 1, 1962, Pub. L. 87–447, 76 Stat. 67; amended Nov. 7, 1967, Pub. L. 90–129, title II, § 201(2), 81 Stat. 367; June 5, 1976, Pub. L. 94–309, § 5, 90 Stat. 684, related to assistance of the Secretary by the Commission, prior to repeal by Pub. L. 95–567, § 201.

#### EFFECTIVE DATE

Section effective Nov. 2, 1978, see section 403 of Pub. L. 95–567, set out as an Effective Date of 1978 Amendment note under section 390 of this title.

#### SUBPART D—CORPORATION FOR PUBLIC BROADCASTING

### § 396. Corporation for Public Broadcasting

#### (a) Congressional declaration of policy

The Congress hereby finds and declares that—

(1) it is in the public interest to encourage the growth and development of public radio and television broadcasting, including the use of such media for instructional, educational, and cultural purposes;

(2) it is in the public interest to encourage the growth and development of nonbroadcast telecommunications technologies for the delivery of public telecommunications services;

(3) expansion and development of public telecommunications and of diversity of its programming depend on freedom, imagination, and initiative on both local and national levels;

(4) the encouragement and support of public telecommunications, while matters of importance for private and local development, are also of appropriate and important concern to the Federal Government;

(5) it furthers the general welfare to encourage public telecommunications services which will be responsive to the interests of people both in particular localities and throughout the United States, which will constitute an expression of diversity and excellence, and which will constitute a source of alternative telecommunications services for all the citizens of the Nation;

(6) it is in the public interest to encourage the development of programming that involves creative risks and that addresses the needs of unserved and underserved audiences, particularly children and minorities;

(7) it is necessary and appropriate for the Federal Government to complement, assist, and support a national policy that will most effectively make public telecommunications services available to all citizens of the United States;

(8) public television and radio stations and public telecommunications services constitute valuable local community resources for utilizing electronic media to address national concerns and solve local problems through community programs and outreach programs;

(9) it is in the public interest for the Federal Government to ensure that all citizens of the United States have access to public telecommunications services through all appropriate available telecommunications distribution technologies; and

(10) a private corporation should be created to facilitate the development of public telecommunications and to afford maximum protection from extraneous interference and control.

#### (b) Establishment of Corporation; application of District of Columbia Nonprofit Corporation Act

There is authorized to be established a nonprofit corporation, to be known as the "Corporation for Public Broadcasting", which will not be an agency or establishment of the United States Government. The Corporation shall be subject to the provisions of this section, and, to the extent consistent with this section, to the District of Columbia Nonprofit Corporation Act.

#### (c) Board of Directors; functions, duties, etc.

(1) The Corporation for Public Broadcasting shall have a Board of Directors (hereinafter in this section referred to as the "Board"), consisting of 9 members appointed by the President, by and with the advice and consent of the Senate. No more than 5 members of the Board appointed by the President may be members of the same political party.

(2) The 9 members of the Board appointed by the President (A) shall be selected from among citizens of the United States (not regular full-time employees of the United States) who are eminent in such fields as education, cultural and civic affairs, or the arts, including radio and television; and (B) shall be selected so as to provide as nearly as practicable a broad representation of various regions of the Nation, various professions and occupations, and various kinds of talent and experience appropriate to the functions and responsibilities of the Corporation.

(3) Of the members of the Board appointed by the President under paragraph (1), one member shall be selected from among individuals who represent the licensees and permittees of public television stations, and one member shall be selected from among individuals who represent the licensees and permittees of public radio stations.

(4) The members of the initial Board of Directors shall serve as incorporators and shall take whatever actions are necessary to establish the Corporation under the District of Columbia Nonprofit Corporation Act.

(5) The term of office of each member of the Board appointed by the President shall be 6

AO93

years, except as provided in section 5(c) of the Public Telecommunications Act of 1992. Any member whose term has expired may serve until such member's successor has taken office, or until the end of the calendar year in which such member's term has expired, whichever is earlier. Any member appointed to fill a vacancy occurring prior to the expiration of the term for which such member's predecessor was appointed shall be appointed for the remainder of such term. No member of the Board shall be eligible to serve in excess of 2 consecutive full terms.

(6) Any vacancy in the Board shall not affect its power, but shall be filled in the manner consistent with this chapter.

(7) Members of the Board shall attend not less than 50 percent of all duly convened meetings of the Board in any calendar year. A member who fails to meet the requirement of the preceding sentence shall forfeit membership and the President shall appoint a new member to fill such vacancy not later than 30 days after such vacancy is determined by the Chairman of the Board.

**(d) Election of Chairman and Vice Chairman; compensation of Board members**

(1) Members of the Board shall annually elect one of their members to be Chairman and elect one or more of their members as a Vice Chairman or Vice Chairmen.

(2) The members of the Board shall not, by reason of such membership, be deemed to be officers or employees of the United States. They shall, while attending meetings of the Board or while engaged in duties related to such meetings or other activities of the Board pursuant to this subpart, be entitled to receive compensation at the rate of $150 per day, including traveltime. No Board member shall receive compensation of more than $10,000 in any fiscal year. While away from their homes or regular places of business, Board members shall be allowed travel and actual, reasonable, and necessary expenses.

**(e) Officers and employees; term of office, compensation, qualifications, and removal; political party affiliation, political test or qualification when taking personnel actions**

(1) The Corporation shall have a President, and such other officers as may be named and appointed by the Board for terms and at rates of compensation fixed by the Board. No officer or employee of the Corporation may be compensated by the Corporation at an annual rate of pay which exceeds the rate of basic pay in effect from time to time for level I of the Executive Schedule under section 5312 of title 5. No individual other than a citizen of the United States may be an officer of the Corporation. No officer of the Corporation, other than the Chairman or a Vice Chairman, may receive any salary or other compensation (except for compensation for services on boards of directors of other organizations that do not receive funds from the Corporation, on committees of such boards, and in similar activities for such organizations) from any sources other than the Corporation for services rendered during the period of his or her employment by the Corporation. Service by any officer on boards of directors of other organizations, on committees of such boards, and in similar activities for such organizations shall be

subject to annual advance approval by the Board and subject to the provisions of the Corporation's Statement of Ethical Conduct. All officers shall serve at the pleasure of the Board.

(2) Except as provided in the second sentence of subsection (c)(1) of this section, no political test or qualification shall be used in selecting, appointing, promoting, or taking other personnel actions with respect to officers, agents, and employees of the Corporation.

**(f) Nonprofit and nonpolitical nature of Corporation**

(1) The Corporation shall have no power to issue any shares of stock, or to declare or pay any dividends.

(2) No part of the income or assets of the Corporation shall inure to the benefit of any director, officer, employee, or any other individual except as salary or reasonable compensation for services.

(3) The Corporation may not contribute to or otherwise support any political party or candidate for elective public office.

**(g) Purposes and activities of Corporation; powers under District of Columbia Nonprofit Corporation Act**

(1) In order to achieve the objectives and to carry out the purposes of this subpart, as set out in subsection (a) of this section, the Corporation is authorized to—

(A) facilitate the full development of public telecommunications in which programs of high quality, diversity, creativity, excellence, and innovation, which are obtained from diverse sources, will be made available to public telecommunications entities, with strict adherence to objectivity and balance in all programs or series of programs of a controversial nature;

(B) assist in the establishment and development of one or more interconnection systems to be used for the distribution of public telecommunications services so that all public telecommunications entities may disseminate such services at times chosen by the entities;

(C) assist in the establishment and development of one or more systems of public telecommunications entities throughout the United States; and

(D) carry out its purposes and functions and engage in its activities in ways that will most effectively assure the maximum freedom of the public telecommunications entities and systems from interference with, or control of, program content or other activities.

(2) In order to carry out the purposes set forth in subsection (a) of this section, the Corporation is authorized to—

(A) obtain grants from and make contracts with individuals and with private, State, and Federal agencies, organizations, and institutions;

(B) contract with or make grants to public telecommunications entities, national, regional, and other systems of public telecommunications entities, and independent producers and production entities, for the production or acquisition of public telecommunications services to be made available for use

A094

by public telecommunications entities, except that—

(i) to the extent practicable, proposals for the provision of assistance by the Corporation in the production or acquisition of programs or series of programs shall be evaluated on the basis of comparative merit by panels of outside experts, representing diverse interests and perspectives, appointed by the Corporation; and

(ii) nothing in this subparagraph shall be construed to prohibit the exercise by the Corporation of its prudent business judgement with respect to any grant to assist in the production or acquisition of any program or series of programs recommended by any such panel;

(C) make payments to existing and new public telecommunications entities to aid in financing the production or acquisition of public telecommunications services by such entities, particularly innovative approaches to such services, and other costs of operation of such entities;

(D) establish and maintain, or contribute to, a library and archives of noncommercial educational and cultural radio and television programs and related materials and develop public awareness of, and disseminate information about, public telecommunications services by various means, including the publication of a journal;

(E) arrange, by grant to or contract with appropriate public or private agencies, organizations, or institutions, for interconnection facilities suitable for distribution and transmission of public telecommunications services to public telecommunications entities;

(F) hire or accept the voluntary services of consultants, experts, advisory boards, and panels to aid the Corporation in carrying out the purposes of this subpart;

(G) conduct (directly or through grants or contracts) research, demonstrations, or training in matters related to public television or radio broadcasting and the use of nonbroadcast communications technologies for the dissemination of noncommercial educational and cultural television or radio programs;

(H) make grants or contracts for the use of nonbroadcast telecommunications technologies for the dissemination to the public of public telecommunications services; and

(I) take such other actions as may be necessary to accomplish the purposes set forth in subsection (a) of this section.

Nothing contained in this paragraph shall be construed to commit the Federal Government to provide any sums for the payment of any obligation of the Corporation which exceeds amounts provided in advance in appropriation Acts.

(3) To carry out the foregoing purposes and engage in the foregoing activities, the Corporation shall have the usual powers conferred upon a nonprofit corporation by the District of Columbia Nonprofit Corporation Act, except that the Corporation is prohibited from—

(A) owning or operating any television or radio broadcast station, system, or network, community antenna television system, inter-

connection system or facility, program production facility, or any public telecommunications entity, system, or network; and

(B) producing programs, scheduling programs for dissemination, or disseminating programs to the public.

(4) All meetings of the Board of Directors of the Corporation, including any committee of the Board, shall be open to the public under such terms, conditions, and exceptions as are set forth in subsection (k)(4) of this section.

(5) The Corporation, in consultation with interested parties, shall create a 5-year plan for the development of public telecommunications services. Such plan shall be updated annually by the Corporation.

**(h) Free or reduced rate interconnection service; access to facilities**

(1) Nothing in this chapter, or in any other provision of law, shall be construed to prevent United States communications common carriers from rendering free or reduced rate communications interconnection services for public television or radio services, subject to such rules and regulations as the Commission may prescribe.

(2) Subject to such terms and conditions as may be established by public telecommunications entities receiving space satellite interconnection facilities or services purchased or arranged for, in whole or in part, with funds authorized under this part, other public telecommunications entities shall have reasonable access to such facilities or services for the distribution of educational and cultural programs to public telecommunications entities. Any remaining capacity shall be made available to other persons for the transmission of noncommercial educational and cultural programs and program information relating to such programs, to public telecommunications entities, at a charge or charges comparable to the charge or charges, if any, imposed upon a public telecommunications entity for the distribution of noncommercial educational and cultural programs to public telecommunications entities. No such person shall be denied such access whenever sufficient capacity is available.

**(i) Report to Congress**

(1) The Corporation shall submit an annual report for the preceding fiscal year ending September 30 to the President for transmittal to the Congress on or before the 15th day of May of each year. The report shall include—

(A) a comprehensive and detailed report of the Corporation's operations, activities, financial condition, and accomplishments under this subpart and such recommendations as the Corporation deems appropriate;

(B) a comprehensive and detailed inventory of funds distributed by Federal agencies to public telecommunications entities during the preceding fiscal year;

(C) a listing of each organization that receives a grant from the Corporation to produce programming, the name of the producer of any programming produced under each such grant, the title or description of any

A095

program so produced, and the amount of each such grant;[1]

(D) the summary of the annual report provided to the Secretary pursuant to section 398(b)(4) of this title.

(2) The officers and directors of the Corporation shall be available to testify before appropriate committees of the Congress with respect to such report, the report of any audit made by the Comptroller General pursuant to subsection (l) of this section, or any other matter which such committees may determine.

### (j) Repeal, alteration, or amendment

The right to repeal, alter, or amend this section at any time is expressly reserved.

### (k) Financing restrictions

(1)(A) There is hereby established in the Treasury a fund which shall be known as the Public Broadcasting Fund (hereinafter in this subsection referred to as the "Fund"), to be administered by the Secretary of the Treasury.

(B) There is authorized to be appropriated to the Fund for each of the fiscal years 1978, 1979, and 1980, an amount equal to 40 percent of the total amount of non-Federal financial support received by public broadcasting entities during the fiscal year second preceding each such fiscal year, except that the amount so appropriated shall not exceed $121,000,000 for fiscal year 1978, $140,000,000 for fiscal year 1979, and $160,000,000 for fiscal year 1980.

(C) There is authorized to be appropriated to the Fund, for each of the fiscal years 1981, 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, and 1993, an amount equal to 40 percent of the total amount of non-Federal financial support received by public broadcasting entities during the fiscal year second preceding each such fiscal year, except that the amount so appropriated shall not exceed $265,000,000 for fiscal year 1992, $285,000,000 for fiscal year 1993, $310,000,000 for fiscal year 1994, $375,000,000 for fiscal year 1995, and $425,000,000 for fiscal year 1996.

(D) In addition to any amounts authorized under any other provision of this or any other Act to be appropriated to the Fund, $20,000,000 are hereby authorized to be appropriated to the Fund (notwithstanding any other provision of this subsection) specifically for transition from the use of analog to digital technology for the provision of public broadcasting services for fiscal year 2001.

(E) Funds appropriated under this subsection shall remain available until expended.

(F) In recognition of the importance of educational programs and services, and the expansion of public radio services, to unserved and underserved audiences, the Corporation, after consultation with the system of public telecommunications entities, shall prepare and submit to the Congress an annual report for each of the fiscal years 1994, 1995, and 1996 on the Corporation's activities and expenditures relating to those programs and services.

(2)(A) The funds authorized to be appropriated by this subsection shall be used by the Corporation, in a prudent and financially responsible manner, solely for its grants, contracts, and administrative costs, except that the Corporation may not use any funds appropriated under this subpart for purposes of conducting any reception, or providing any other entertainment, for any officer or employee of the Federal Government or any State or local government. The Corporation shall determine the amount of non-Federal financial support received by public broadcasting entities during each of the fiscal years referred to in paragraph (1) for the purpose of determining the amount of each authorization, and shall certify such amount to the Secretary of the Treasury, except that the Corporation may include in its certification non-Federal financial support received by a public broadcasting entity during its most recent fiscal year ending before September 30 of the year for which certification is made. Upon receipt of such certification, the Secretary of the Treasury shall make available to the Corporation, from such funds as may be appropriated to the Fund, the amount authorized for each of the fiscal years pursuant to the provisions of this subsection.

(B) Funds appropriated and made available under this subsection shall be disbursed by the Secretary of the Treasury on a fiscal year basis.

(3)(A)(i) The Corporation shall establish an annual budget for use in allocating amounts from the Fund. Of the amounts appropriated into the Fund available for allocation for any fiscal year—

(I) $10,200,000 shall be available for the administrative expenses of the Corporation for fiscal year 1989, and for each succeeding fiscal year the amount which shall be available for such administrative expenses shall be the sum of the amount made available to the Corporation under this subclause for such expenses in the preceding fiscal year plus the greater of 4 percent of such amount or a percentage of such amount equal to the percentage change in the Consumer Price Index, except that none of the amounts allocated under subclauses (II), (III), and (IV) and clause (v) shall be used for any administrative expenses of the Corporation and not more than 5 percent of all the amounts appropriated into the Fund available for allocation for any fiscal year shall be available for such administrative expenses;

(II) 6 percent of such amounts shall be available for expenses incurred by the Corporation for capital costs relating to telecommunications satellites, the payment of programming royalties and other fees, the costs of interconnection facilities and operations (as provided in clause (iv)(I)), and grants which the Corporation may make for assistance to stations that broadcast programs in languages other than English or for assistance in the provision of affordable training programs for employees at public broadcast stations, and if the available funding level permits, for projects and activities that will enhance public broadcasting;

(III) 75 percent of the remainder (after allocations are made under subclause (I) and subclause (II)) shall be allocated in accordance with clause (ii); and

(IV) 25 percent of such remainder shall be allocated in accordance with clause (iii).

---

[1] So in original. Probably should be followed by "and".

(ii) Of the amounts allocated under clause (i)(III) for any fiscal year—

(I) 75 percent of such amounts shall be available for distribution among the licensees and permittees of public television stations pursuant to paragraph (6)(B); and

(II) 25 percent of such amounts shall be available for distribution under subparagraph (B)(i), and in accordance with any plan implemented under paragraph (6)(A), for national public television programming.

(iii) Of the amounts allocated under clause (i)(IV) for any fiscal year—

(I) 70 percent of such amounts shall be available for distribution among the licensees and permittees of public radio stations pursuant to paragraph (6)(B);

(II) 7 percent of such amounts shall be available for distribution under subparagraph (B)(i) for public radio programming; and

(III) 23 percent of such amounts shall be available for distribution among the licensees and permittees of public radio stations pursuant to paragraph (6)(B), solely to be used for acquiring or producing programming that is to be distributed nationally and is designed to serve the needs of a national audience.

(iv)(I) From the amount provided pursuant to clause (i)(II), the Corporation shall defray an amount equal to 50 percent of the total costs of interconnection facilities and operations to facilitate the availability of public television and radio programs among public broadcast stations.

(II) Of the amounts received as the result of any contract, lease agreement, or any other arrangement under which the Corporation directly or indirectly makes available interconnection facilities, 50 percent of such amounts shall be distributed to the licensees and permittees of public television stations and public radio stations. The Corporation shall not have any authority to establish any requirements, guidelines, or limitations with respect to the use of such amounts by such licensees and permittees.

(v) Of the interest on the amounts appropriated into the Fund which is available for allocation for any fiscal year—

(I) 75 percent shall be available for distribution for the purposes referred to in clause (ii)(II); and

(II) 25 percent shall be available for distribution for the purposes referred to in clause (iii)(II) and (III).

(B)(i) The Corporation shall utilize the funds allocated pursuant to subparagraph (A)(ii)(II) and subparagraph (A)(iii)(II) to make grants for production of public television or radio programs by independent producers and production entities and public telecommunications entities, producers of national children's educational programming, and producers of programs addressing the needs and interests of minorities, and for acquisition of such programs by public telecommunications entities. The Corporation may make grants to public telecommunications entities and producers for the production of programs in languages other than English. Of the funds utilized pursuant to this clause, a substantial amount shall be distributed to independent producers and production entities, producers of national children's educational programming, and producers of programming addressing the needs and interests of minorities for the production of programs.

(ii) All funds available for distribution under clause (i) shall be distributed to entities outside the Corporation and shall not be used for the general administrative costs of the Corporation, the salaries or related expenses of Corporation personnel and members of the Board, or for expenses of consultants and advisers to the Corporation.

(iii)(I) For fiscal year 1990 and succeeding fiscal years, the Corporation shall, in carrying out its obligations under clause (i) with respect to public television programming, provide adequate funds for an independent production service.

(II) Such independent production service shall be separate from the Corporation and shall be incorporated under the laws of the District of Columbia for the purpose of contracting with the Corporation for the expenditure of funds for the production of public television programs by independent producers and independent production entities.

(III) The Corporation shall work with organizations or associations of independent producers or independent production entities to develop a plan and budget for the operation of such service that is acceptable to the Corporation.

(IV) The Corporation shall ensure that the funds provided to such independent production service shall be used exclusively in pursuit of the Corporation's obligation to expand the diversity and innovativeness of programming available to public broadcasting.

(V) The Corporation shall report annually to Congress regarding the activities and expenditures of the independent production service, including carriage and viewing information for programs produced or acquired with funds provided pursuant to subclause (I). At the end of fiscal years 1992, 1993, 1994, and 1995, the Corporation shall submit a report to Congress evaluating the performance of the independent production service in light of its mission to expand the diversity and innovativeness of programming available to public broadcasting.

(VI) The Corporation shall not contract to provide funds to any such independent production service, unless that service agrees to comply with public inspection requirements established by the Corporation within 3 months after August 26, 1992. Under such requirements the service shall maintain at its offices a public file, updated regularly, containing information relating to the service's award of funds for the production of programming. The information shall be available for public inspection and copying for at least 3 years and shall be of the same kind as the information required to be maintained by the Corporation under subsection (l)(4)(B) of this section.

(4) Funds may not be distributed pursuant to this subsection to the Public Broadcasting Service or National Public Radio (or any successor organization), or to the licensee or permittee of any public broadcast station, unless the governing body of any such organization, any commit-

§ 396          TITLE 47—TELEGRAPHS, TELEPHONES, AND RADIOTELEGRAPHS          Page 202

tee of such governing body, or any advisory body of any such organization, holds open meetings preceded by reasonable notice to the public. All persons shall be permitted to attend any meeting of the board, or of any such committee or body, and no person shall be required, as a condition to attendance at any such meeting, to register such person's name or to provide any other information. Nothing contained in this paragraph shall be construed to prevent any such board, committee, or body from holding closed sessions to consider matters relating to individual employees, proprietary information, litigation and other matters requiring the confidential advice of counsel, commercial or financial information obtained from a person on a privileged or confidential basis, or the purchase of property or services whenever the premature exposure of such purchase would compromise the business interests of any such organization. If any such meeting is closed pursuant to the provisions of this paragraph, the organization involved shall thereafter (within a reasonable period of time) make available to the public a written statement containing an explanation of the reasons for closing the meeting.

(5) Funds may not be distributed pursuant to this subsection to any public telecommunications entity that does not maintain for public examination copies of the annual financial and audit reports, or other information regarding finances, submitted to the Corporation pursuant to subsection (l)(3)(B) of this section.

(6)(A) The Corporation shall conduct a study and prepare a plan, in consultation with public television licensees (or designated representatives of those licensees) and the Public Broadcasting Service, on how funds available to the Corporation under paragraph (3)(A)(ii)(II) can be best allocated to meet the objectives of this chapter with regard to national public television programming. The plan, which shall be based on the conclusions resulting from the study, shall be submitted by the Corporation to the Congress not later than January 31, 1990. Unless directed otherwise by an Act of Congress, the Corporation shall implement the plan during the first fiscal year beginning after the fiscal year in which the plan is submitted to Congress.

(B) The Corporation shall make a basic grant from the portion reserved for television stations under paragraph (3)(A)(ii)(I) to each licensee and permittee of a public television station that is on the air. The Corporation shall assist radio stations to maintain and improve their service where public radio is the only broadcast service available. The balance of the portion reserved for television stations and the total portion reserved for radio stations under paragraph (3)(A)(iii)(I) shall be distributed to licensees and permittees of such stations in accordance with eligibility criteria (which the Corporation shall review periodically in consultation with public radio and television licensees or permittees, or their designated representatives) that promote the public interest in public broadcasting, and on the basis of a formula designed to—

    (i) provide for the financial needs and requirements of stations in relation to the communities and audiences such stations undertake to serve;

(ii) maintain existing, and stimulate new, sources of non-Federal financial support for stations by providing incentives for increases in such support; and

(iii) assure that each eligible licensee and permittee of a public radio station receives a basic grant.

(7) The funds distributed pursuant to paragraph (3)(A)(ii)(I) and (iii)(I) may be used at the discretion of the recipient for purposes related primarily to the production or acquisition of programming.

(8)(A) Funds may not be distributed pursuant to this subpart to any public broadcast station (other than any station which is owned and operated by a State, a political or special purpose subdivision of a State, or a public agency) unless such station establishes a community advisory board. Any such station shall undertake good faith efforts to assure that (i) its advisory board meets at regular intervals; (ii) the members of its advisory board regularly attend the meetings of the advisory board; and (iii) the composition of its advisory board are [2] reasonably representative of the diverse needs and interests of the communities served by such station.

(B) The board shall be permitted to review the programming goals established by the station, the service provided by the station, and the significant policy decisions rendered by the station. The board may also be delegated any other responsibilities, as determined by the governing body of the station. The board shall advise the governing body of the station with respect to whether the programming and other policies of such station are meeting the specialized educational and cultural needs of the communities served by the station, and may make such recommendations as it considers appropriate to meet such needs.

(C) The role of the board shall be solely advisory in nature, except to the extent other responsibilities are delegated to the board by the governing body of the station. In no case shall the board have any authority to exercise any control over the daily management or operation of the station.

(D) In the case of any public broadcast station (other than any station which is owned and operated by a State, a political or special purpose subdivision of a State, or a public agency) in existence on November 2, 1978, such station shall comply with the requirements of this paragraph with respect to the establishment of a community advisory board not later than 180 days after November 2, 1978.

(E) The provision of subparagraph (A) prohibiting the distribution of funds to any public broadcast station (other than any station which is owned and operated by a State, a political or special purpose subdivision of a State, or a public agency) unless such station establishes a community advisory board shall be the exclusive remedy for the enforcement of the provisions of this paragraph.

(9) Funds may not be distributed pursuant to this subsection to the Public Broadcasting Service or National Public Radio (or any successor

_____
[2] So in original. Probably should be "is".

organization) unless assurances are provided to the Corporation that no officer or employee of the Public Broadcasting Service or National Public Radio (or any successor organization), as the case may be, will be compensated in excess of reasonable compensation as determined pursuant to Section[3] 4958 of title 26 for services that the officer or employee renders to organization,[4] and unless further assurances are provided to the Corporation that no officer or employee of such an entity will be loaned money by that entity on an interest-free basis.

(10)(A) There is hereby established in the Treasury a fund which shall be known as the Public Broadcasting Satellite Interconnection Fund (hereinafter in this subsection referred to as the "Satellite Interconnection Fund"), to be administered by the Secretary of the Treasury.

(B) There is authorized to be appropriated to the Satellite Interconnection Fund, for fiscal year 1991, the amount of $200,000,000. If such amount is not appropriated in full for fiscal year 1991, the portion of such amount not yet appropriated is authorized to be appropriated for fiscal years 1992 and 1993. Funds appropriated to the Satellite Interconnection Fund shall remain available until expended.

(C) The Secretary of the Treasury shall make available and disburse to the Corporation, at the beginning of fiscal year 1991 and of each succeeding fiscal year thereafter, such funds as have been appropriated to the Satellite Interconnection Fund for the fiscal year in which such disbursement is to be made.

(D) Notwithstanding any other provision of this subsection except paragraphs (4), (5), (8), and (9), all funds appropriated to the Satellite Interconnection Fund and interest thereon—

(i) shall be distributed by the Corporation to the licensees and permittees of noncommercial educational television broadcast stations providing public telecommunications services or the national entity they designate for satellite interconnection purposes and to those public telecommunications entities participating in the public radio satellite interconnection system or the national entity they designate for satellite interconnection purposes, exclusively for the capital costs of the replacement, refurbishment, or upgrading of their national satellite interconnection systems and associated maintenance of such systems; and

(ii) shall not be used for the administrative costs of the Corporation, the salaries or related expenses of Corporation personnel and members of the Board, or for expenses of consultants and advisers to the Corporation.

(11)(A) Funds may not be distributed pursuant to this subsection for any fiscal year to the licensee or permittee of any public broadcast station if such licensee or permittee—

(i) fails to certify to the Corporation that such licensee or permittee complies with the Commission's regulations concerning equal employment opportunity as published under section 73.2080 of title 47, Code of Federal Regulations, or any successor regulations thereto; or

³ So in original. Probably should not be capitalized.
⁴ So in original. Probably should be "the organization.".

(ii) fails to submit to the Corporation the report required by subparagraph (B) for the preceding calendar year.

(B) A licensee or permittee of any public broadcast station with more than five full-time employees to file annually with the Corporation a statistical report, consistent with reports required by Commission regulation, identifying by race and sex the number of employees in each of the following full-time and part-time job categories:

(i) Officials and managers.
(ii) Professionals.
(iii) Technicians.
(iv) Semiskilled operatives.
(v) Skilled craft persons.
(vi) Clerical and office personnel.
(vii) Unskilled operatives.
(viii) Service workers.

(C) In addition, such report shall state the number of job openings occurring during the course of the year. Where the job openings were filled in accordance with the regulations described in subparagraph (A)(i), the report shall so certify, and where the job openings were not filled in accordance with such regulations, the report shall contain a statement providing reasons therefor. The statistical report shall be available to the public at the central office and at every location where more than five full-time employees are regularly assigned to work.

(12) Funds may not be distributed under this subsection to any public broadcasting entity that directly or indirectly—

(A) rents contributor or donor names (or other personally identifiable information) to or from, or exchanges such names or information with, any Federal, State, or local candidate, political party, or political committee; or

(B) discloses contributor or donor names, or other personally identifiable information, to any nonaffiliated third party unless—

(i) such entity clearly and conspicuously discloses to the contributor or donor that such information may be disclosed to such third party;

(ii) the contributor or donor is given the opportunity, before the time that such information is initially disclosed, to direct that such information not be disclosed to such third party; and

(iii) the contributor or donor is given an explanation of how the contributor or donor may exercise that nondisclosure option.

**(l) Financial management and records**

(1)(A) The accounts of the Corporation shall be audited annually in accordance with generally accepted auditing standards by independent certified public accountants or independent licensed public accountants certified or licensed by a regulatory authority of a State or other political subdivision of the United States, except that such requirement shall not preclude shared auditing arrangements between any public telecommunications entity and its licensee where such licensee is a public or private institution. The audits shall be conducted at the place or places where the accounts of the Corporation

Ao 99

are normally kept. All books, accounts, financial records, reports, files, and all other papers, things, or property belonging to or in use by the Corporation and necessary to facilitate the audits shall be made available to the person or persons conducting the audits; and full facilities for verifying transactions with the balances or securities held by depositories, fiscal agents and custodians shall be afforded to such person or persons.

(B) The report of each such independent audit shall be included in the annual report required by subsection (i) of this section. The audit report shall set forth the scope of the audit and include such statements as are necessary to present fairly the Corporation's assets and liabilities, surplus or deficit, with an analysis of the changes therein during the year, supplemented in reasonable detail by a statement of the Corporation's income and expenses during the year, and a statement of the sources and application of funds, together with the independent auditor's opinion of those statements.

(2)(A) The financial transactions of the Corporation for any fiscal year during which Federal funds are available to finance any portion of its operations may be audited by the Government Accountability Office in accordance with the principles and procedures applicable to commercial corporate transactions and under such rules and regulations as may be prescribed by the Comptroller General of the United States. Any such audit shall be conducted at the place or places where accounts of the Corporation are normally kept. The representative of the Government Accountability Office shall have access to all books, accounts, records, reports, files, and all other papers, things, or property belonging to or in use by the Corporation pertaining to its financial transactions and necessary to facilitate the audit, and they shall be afforded full facilities for verifying transactions with the balances or securities held by depositories, fiscal agents, and custodians. All such books, accounts, records, reports, files, papers and property of the corporation shall remain in possession and custody of the Corporation.

(B) A report of each such audit shall be made by the Comptroller General to the Congress. The report to the Congress shall contain such comments and information as the Comptroller General may deem necessary to inform Congress of the financial operations and condition of the Corporation, together with such recommendations with respect thereto as he may deem advisable. The report shall also show specifically any program, expenditure, or other financial transaction or undertaking observed in the course of the audit, which, in the opinion of the Comptroller General, has been carried on or made without authority of law. A copy of each report shall be furnished to the President, to the Secretary, and to the Corporation at the time submitted to the Congress.

(3)(A) Not later than 1 year after November 2, 1978, the Corporation, in consultation with the Comptroller General, and as appropriate with others, shall develop accounting principles which shall be used uniformly by all public telecommunications entities receiving funds under this subpart, taking into account organizational differences among various categories of such entities. Such principles shall be designed to account fully for all funds received and expended for public telecommunications purposes by such entities.

(B) Each public telecommunications entity receiving funds under this subpart shall be required—

(i) to keep its books, records, and accounts in such form as may be required by the Corporation;

(ii)(I) to undergo a biennial audit by independent certified public accountants or independent licensed public accountants certified or licensed by a regulatory authority of a State, which audit shall be in accordance with auditing standards developed by the Corporation, in consultation with the Comptroller General; or

(II) to submit a financial statement in lieu of the audit required by subclause (I) if the Corporation determines that the cost burden of such audit on such entity is excessive in light of the financial condition of such entity; and

(iii) to furnish biennially to the Corporation a copy of the audit report required pursuant to clause (ii), as well as such other information regarding finances (including an annual financial report) as the Corporation may require.

(C) Any recipient of assistance by grant or contract under this section, other than a fixed price contract awarded pursuant to competitive bidding procedures, shall keep such records as may be reasonably necessary to disclose fully the amount and the disposition by such recipient of such assistance, the total cost of the project or undertaking in connection with which such assistance is given or used, and the amount and nature of that portion of the cost of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit.

(D) The Corporation or any of its duly authorized representatives shall have access to any books, documents, papers, and records of any recipient of assistance for the purpose of auditing and examining all funds received or expended for public telecommunications purposes by the recipient. The Comptroller General of the United States or any of his duly authorized representatives also shall have access to such books, documents, papers, and records for the purpose of auditing and examining all funds received or expended for public telecommunications purposes during any fiscal year for which Federal funds are available to the Corporation.

(4)(A) The Corporation shall maintain the information described in subparagraphs (B), (C), and (D) at its offices for public inspection and copying for at least 3 years, according to such reasonable guidelines as the Corporation may issue. This public file shall be updated regularly. This paragraph shall be effective August 26, 1992, and shall apply to all grants awarded after January 1, 1993.

(B) Subsequent to any award of funds by the Corporation for the production or acquisition of national broadcasting programming pursuant to subsection (k)(3)(A)(ii)(II) or (iii)(II) of this section, the Corporation shall make available for public inspection the following:

(i) Grant and solicitation guidelines for proposals for such programming.

(ii) The reasons for selecting the proposal for which the award was made.

(iii) Information on each program for which the award was made, including the names of the awardee and producer (and if the awardee or producer is a corporation or partnership, the principals of such corporation or partnership), the monetary amount of the award, and the title and description of the program (and of each program in a series of programs).

(iv) A report based on the final audit findings resulting from any audit of the award by the Corporation or the Comptroller General.

(v) Reports which the Corporation shall require to be provided by the awardee relating to national public broadcasting programming funded, produced, or acquired by the awardee with such funds. Such reports shall include, where applicable, the information described in clauses (i), (ii), and (iii), but shall exclude proprietary, confidential, or privileged information.

(C) The Corporation shall make available for public inspection the final report required by the Corporation on an annual basis from each recipient of funds under subsection (k)(3)(A)(iii)(III) of this section, excluding proprietary, confidential, or privileged information.

(D) The Corporation shall make available for public inspection an annual list of national programs distributed by public broadcasting entities that receive funds under subsection (k)(3)(A)(ii)(III) or (iii)(II) of this section and are engaged primarily in the national distribution of public television or radio programs. Such list shall include the names of the programs (or program series), producers, and providers of funding.

**(m) Needs of minorities and other groups**

(1) Prior to July 1, 1989, and every three years thereafter, the Corporation shall compile an assessment of the needs of minority and diverse audiences, the plans of public broadcasting entities and public telecommunications entities to address such needs, the ways radio and television can be used to help these underrepresented groups, and projections concerning minority employment by public broadcasting entities and public telecommunications entities. Such assessment shall address the needs of racial and ethnic minorities, new immigrant populations, people for whom English is a second language, and adults who lack basic reading skills.

(2) Commencing July 1, 1989, the Corporation shall prepare an annual report on the provision by public broadcasting entities and public telecommunications entities of service to the audiences described in paragraph (1). Such report shall address programming (including that which is produced by minority producers), training, minority employment, and efforts by the Corporation to increase the number of minority public radio and television stations eligible for financial support from the Corporation. Such report shall include a summary of the statistical reports received by the Corporation pursuant to subsection (k)(11) of this section, and a comparison of the information contained in those reports with the information submitted by the Corporation in the previous year's annual report.

(3) As soon as they have been prepared, each assessment and annual report required under paragraphs (1) and (2) shall be submitted to Congress.

(June 19, 1934, ch. 652, title III, § 396, as added Pub. L. 90–129, title II, § 201(9), Nov. 7, 1967, 81 Stat. 368; amended Pub. L. 90–294, Apr. 26, 1968, 82 Stat. 108; Pub. L. 91–97, § 3, Oct. 27, 1969, 83 Stat. 146; Pub. L. 91–437, § 2, Oct. 7, 1970, 84 Stat. 888; Pub. L. 92–411, § 1, Aug. 29, 1972, 86 Stat. 643; Pub. L. 93–84, § 1(a), (b), Aug. 6, 1973, 87 Stat. 219; Pub. L. 94–192, §§ 2–4, Dec. 31, 1975, 89 Stat. 1099, 1100; Pub. L. 95–567, title III, §§ 301–303(a), 304–307(a), 308, Nov. 2, 1978, 92 Stat. 2411, 2412, 2414, 2415, 2419; Pub. L. 97–35, title XII, §§ 1224, 1225(a)(1), (b), (c), 1226, 1227(a)–(c)(3), (d)(1), (2), (e)–(g), 1228, 1234(a), Aug. 13, 1981, 95 Stat. 725–730, 736; Pub. L. 98–214, §§ 3, 5, 6, Dec. 8, 1983, 97 Stat. 1467–1469; Pub. L. 99–272, title V, § 5001(c), Apr. 7, 1986, 100 Stat. 117; Pub. L. 100–626, §§ 3, 4(a), 5–9(a), Nov. 7, 1988, 102 Stat. 3207–3211; Pub. L. 102–356, §§ 4, 5(a), (b), 6–14, Aug. 26, 1992, 106 Stat. 949–953; Pub. L. 105–277, div. A, § 101(f) [title VII, § 701], Oct. 21, 1998, 112 Stat. 2681–337, 2681–389; Pub. L. 106–113, div. B, § 1000(a)(9) [title V, § 5002(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–592; Pub. L. 107–20, title II, § 2702, July 24, 2001, 115 Stat. 182; Pub. L. 108–271, § 8(b), July 7, 2004, 118 Stat. 814.)

### REFERENCES IN TEXT

The District of Columbia Nonprofit Corporation Act, referred to in subsecs. (b), (c)(4), and (g)(3), is Pub. L. 87–569, Aug. 6, 1962, 76 Stat. 265, as amended, which is not classified to the Code.

Section 5(c) of the Public Telecommunications Act of 1992, referred to in subsec. (c)(5), is section 5(c) of Pub. L. 102–356, which is set out below.

### PRIOR PROVISIONS

A prior section 396, act June 19, 1934, ch. 652, title III, § 396, as added May 1, 1962, Pub. L. 87–447, 76 Stat. 67, was renumbered section 394 by Pub. L. 90–129, and subsequently renumbered section 393A by Pub. L. 101–437, and is classified to section 393a of this title.

### AMENDMENTS

2004—Subsec. (l)(2)(A). Pub. L. 108–271 substituted "Government Accountability Office" for "General Accounting Office" in two places.

2001—Subsec. (k)(1)(D) to (F). Pub. L. 107–20 added subpar. (D) and redesignated former subpars. (D) and (E) as (E) and (F), respectively.

1999—Subsec. (k)(12). Pub. L. 106–113 added par. (12).

1998—Subsec. (k)(9). Pub. L. 105–277 which directed the substitution of "in excess of reasonable compensation as determined pursuant to Section 4958 of title 26 for services that the officer or employee renders to organization" for "at an annual rate of pay which exceeds the rate of basic pay in effect from time to time for level I of the Executive Schedule under 5312 of title 5,", was executed by making the substitution for text which read "section 5312 of title 5" to reflect the probable intent of Congress.

1992—Subsec. (a)(8) to (10). Pub. L. 102–356, § 4, added pars. (8) and (9) and redesignated former par. (8) as (10).

Subsec. (c)(1). Pub. L. 102–356, § 5(a)(1), substituted "9" for "10" and "5" for "6".

Subsec. (c)(2). Pub. L. 102–356, § 5(a)(2), substituted "9" for "10".

Subsec. (c)(5). Pub. L. 102–356, § 5(b), amended par. (5) generally. Prior to amendment, par. (5) read as follows:

"The term of office of each member of the Board appointed by the President shall be 5 years, except that any member appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed for the remainder of such term. No member of the Board shall be eligible to serve in excess of 2 consecutive terms of 5 years each."

Subsec. (e)(1). Pub. L. 102–356, § 6, inserted fourth sentence and struck out former fourth sentence which read as follows: "No officer of the Corporation, other than the Chairman or a Vice Chairman, may receive any salary or other compensation from any source other than the Corporation for services rendered during the period of his employment by the Corporation."

Subsec. (i)(1)(C), (D). Pub. L. 102–356, § 7, added subpar. (C) and redesignated former subpar. (C) as (D).

Subsec. (k)(1)(C). Pub. L. 102–356, § 8(a), inserted provisions authorizing appropriations of $310,000,000 for fiscal year 1994, $375,000,000 for fiscal year 1995, and $425,000,000 for fiscal year 1996, and struck out provisions authorizing appropriations of $180,000,000 for fiscal year 1981, $200,000,000 for fiscal year 1982, $220,000,000 for fiscal year 1983, $145,000,000 for fiscal year 1984, $153,000,000 for fiscal year 1985, $162,000,000 for fiscal year 1986, $200,000,000 for fiscal year 1987, $214,000,000 for fiscal year 1988, $238,000,000 for fiscal year 1989, $254,000,000 for fiscal year 1990, and $245,000,000 for fiscal year 1991.

Subsec. (k)(1)(E). Pub. L. 102–356, § 8(b), added subpar. (E).

Subsec. (k)(3)(A)(i)(II). Pub. L. 102–356, § 9, inserted "or for assistance in the provision of affordable training programs for employees at public broadcast stations" after "other than English".

Subsec. (k)(3)(B)(iii)(V). Pub. L. 102–356, § 10, inserted before period at end of first sentence ", including carriage and viewing information for programs produced or acquired with funds provided pursuant to subclause (I)" and substituted "fiscal years 1992, 1993, 1994, and 1995" for "fiscal year 1992" in second sentence.

Subsec. (k)(3)(B)(iii)(VI). Pub. L. 102–356, § 14(b), added subcl. (VI).

Subsec. (k)(6)(B). Pub. L. 102–356, § 11, inserted "(which the Corporation shall review periodically in consultation with public radio and television licensees or permittees, or their designated representatives)" after "eligibility criteria".

Subsec. (k)(11). Pub. L. 102–356, § 12(a), added par. (11).

Subsec. (l)(3)(B)(ii). Pub. L. 102–356, § 13(a), (b)(1), designated existing provisions as subcl. (I), substituted "biennial" for "biannual", substituted "or" for "and" after semicolon, and added subcl. (II).

Subsec. (l)(3)(B)(iii). Pub. L. 102–356, § 13(b)(2), substituted "biennially" for "biannually".

Subsec. (l)(4). Pub. L. 102–356, § 14(a), added par. (4) and struck out former par. (4) which consisted of subpars. (A) to (C) relating to National Public Radio's system of financial controls and budget and requiring Corporation to report to Congress not later than 15 days after Dec. 8, 1983, on actions taken by National Public Radio with respect to deficits it accumulated before Oct. 1, 1983.

Subsec. (m)(2). Pub. L. 102–356, § 12(b), inserted at end "Such report shall include a summary of the statistical reports received by the Corporation pursuant to subsection (k)(11), and a comparison of the information contained in those reports with the information submitted by the Corporation in the previous year's annual report."

1988—Subsec. (a)(6) to (8). Pub. L. 100–626, § 5, added par. (6) and redesignated former pars. (6) and (7) as (7) and (8), respectively.

Subsec. (g)(2)(B)(ii). Pub. L. 100–626, § 6, struck out "contract or" after "respect to any".

Subsec. (k)(1)(C). Pub. L. 100–626, § 3, substituted "1990, 1991, 1992, and 1993" for "and 1990" and "40 percent" for "50 percent", struck out "and" after "fiscal year 1989,", and inserted ", $245,000,000 for fiscal year 1991, $265,000,000 for fiscal year 1992, and $285,000,000 for fiscal year 1993" after "fiscal year 1990".

Subsec. (k)(3)(A)(i)(I), (II). Pub. L. 100–626, § 7(a)(1), (2), amended subcls. (I) and (II) generally. Prior to amendment, subcls. (I) and (II) read as follows:

"(I) not more than 5 percent of such amounts shall be available for the administrative expenses of the Corporation;

"(II) not less than 5 percent of such amounts shall be available for other expenses incurred by the Corporation, including capital costs relating to telecommunications satellites, the payment of programming royalties and other fees, and the costs of interconnection facilities and operations (as provided in clause (iv)(I)), except that the total amount available for obligation for any fiscal year under this subclause and subclause (I) shall not exceed 10 percent of the amounts appropriated into the Fund available for allocation for such fiscal year;".

Subsec. (k)(3)(A)(i)(III). Pub. L. 100–626, § 7(a)(3), substituted "clause (ii)" for "clause (ii)(I)".

Subsec. (k)(3)(A)(ii)(II). Pub. L. 100–626, § 7(b), substituted ", and in accordance with any plan implemented under paragraph (6)(A), for national public" for "for public".

Subsec. (k)(3)(A)(iii). Pub. L. 100–626, § 7(c), amended cl. (iii) generally. Prior to amendment, cl. (iii) read as follows: "Of the amounts allocated under clause (i)(IV) for any fiscal year—

"(I) not less than 50 percent of such amounts (as determined under paragraph (6)(A)) shall be available for distribution among the licensees and permittees of public radio stations pursuant to paragraph (6)(B); and

"(II) not more than 50 percent of such amounts (as determined under paragraph (6)(A)) shall be available for distribution under subparagraph (B)(i) for public radio."

Subsec. (k)(3)(A)(iv)(I). Pub. L. 100–626, § 7(e), substituted "From the amount provided pursuant to clause (i)(II)," for "Subject to the provisions of clause (v),".

Subsec. (k)(3)(A)(v). Pub. L. 100–626, § 7(d), amended cl. (v) generally. Prior to amendment, cl. (v) read as follows: "If the expenses incurred by the Corporation under clause (i)(II) for any fiscal year for—

"(I) capital costs relating to telecommunications satellites;

"(II) the payment of programming royalties and other fees; and

"(III) the costs of interconnection facilities and operations (as provided in clause (iv));

exceed 6 percent of the amounts appropriated into the Fund available for allocation for such fiscal year, then 75 percent of such excess costs shall be defrayed by the licensees and permittees of public television stations from amounts available to such licensees and permittees under clause (ii)(I) and 25 percent of such excess costs shall be defrayed by the licensees and permittees of public radio stations from amounts available to such licensees and permittees under clause (iii)(I)."

Subsec. (k)(3)(B)(i). Pub. L. 100–626, § 7(f), amended cl. (i) generally. Prior to amendment, cl. (i) read as follows: "The Corporation shall utilize the funds allocated pursuant to subparagraph (A)(ii)(II) and subparagraph (A)(iii)(II), and a significant portion of such other funds as may be available to the Corporation, to make grants and contracts for production of public television or radio programs by independent producers and production entities and public telecommunications entities, and for acquisition of such programs by public telecommunications entities. Of the funds utilized pursuant to this clause, a substantial amount shall be reserved for distribution to independent producers and production entities for the production of programs."

Subsec. (k)(3)(B)(iii). Pub. L. 100–626, § 8, added cl. (iii).

Subsec. (k)(3)(C). Pub. L. 100–626, § 7(g), struck out subpar. (C) which related to limit on expenditure by Corporation in fiscal year 1981 of an amount equal to not more than 5 percent of funds made available by Secretary of the Treasury.

Page 207      TITLE 47—TELEGRAPHS, TELEPHONES, AND RADIOTELEGRAPHS      § 396

Subsec. (k)(3)(D). Pub. L. 100–626, §7(g), struck out subpar. (D) which related to expenditure by Corporation of 105 percent of amount derived for preceding fiscal year, for activities authorized under subsection (g)(2) of this section, in fiscal years 1982 and 1983.

Subsec. (k)(6)(A). Pub. L. 100–626, §7(h), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "The Corporation, in consultation with public radio stations and with National Public Radio (or any successor organization), shall determine the percentage of funds allocated under subclause (I) and subclause (II) of paragraph (3)(A)(iii) for each fiscal year. The Corporation, in consultation with such organizations, also shall conduct an annual review of the criteria and conditions applicable to such allocations."

Subsec. (k)(6)(B). Pub. L. 100–626, §7(i), inserted after first sentence "The Corporation shall assist radio stations to maintain and improve their service where public radio is the only broadcast service available."

Subsec. (k)(7). Pub. L. 100–626, §7(j), inserted "(ii)(I) and (iii)(I)" after "paragraph (3)(A)".

Subsec. (k)(10). Pub. L. 100–626, §4(a), added par. (10).

Subsec. (m). Pub. L. 100–626, §9(a), added subsec. (m).

1986—Subsec. (k)(1)(C). Pub. L. 99–272, §5001(c)(1), substituted "1986, 1987, 1988, 1989, and 1990" for "and 1986", struck out "and" after "fiscal year 1985,", and inserted ", $200,000,000 for fiscal year 1987, $214,000,000 for fiscal year 1988, $238,000,000 for fiscal year 1989, and $254,000,000 for fiscal year 1990" before period at end.

Subsec. (k)(3)(A)(i)(II). Pub. L. 99–272, §5001(c)(2), struck out "research, training, technical assistance, engineering, instructional support, payment of interest on indebtedness," after "Corporation, including".

Subsec. (k)(8) to (10). Pub. L. 99–272, §5001(c)(3), redesignated paragraphs (9) and (10) as (8) and (9), respectively. Former subsec. (8), which related to refunding to the Corporation of an amount equal to the amount of unrelated business income tax, was struck out.

1983—Subsec. (c)(1). Pub. L. 98–214, §6(a), struck out ", and the President of the Corporation" after "advice and consent of the Senate" and provision directing that the President of the Corporation serve as the Chairman of the Board.

Subsec. (d)(1). Pub. L. 98–214, §6(b)(1), inserted "elect one of their members to be Chairman and" after "Members of the Board shall annually".

Subsec. (e)(1). Pub. L. 98–214, §6(c), substituted "No officer of the Corporation, other than the Chairman or a Vice Chairman" for "No officer of the Corporation, other than a Vice Chairman".

Subsec. (k)(1)(C). Pub. L. 98–214, §3(a), substituted ", $145,000,000 for fiscal year 1984, $153,000,000 for fiscal year 1985, and $162,000,000 for fiscal year 1986" for ", and $130,000,000 for each of the fiscal years 1984, 1985, and 1986".

Subsec. (k)(10). Pub. L. 98–214, §3(b), inserted provision requiring assurances that no officer or employee of such entity will be loaned money by that entity on an interest-free basis.

Subsec. (l)(4). Pub. L. 98–214, §5, added par. (4).

1981—Subsec. (a)(5). Pub. L. 97–35, §1224, inserted provisions respecting alternative telecommunications services.

Subsec. (c). Pub. L. 97–35, §1225(a)(1), amended subsec. (c) generally, substituting provisions respecting appointment, selection, service, etc., of the ten members of the Board of Directors, for provisions respecting appointment, selection, service, etc., of the 15 members of the Board of Directors.

Subsec. (d). Pub. L. 97–35, §1225(b), amended subsec. (d) generally, substituting in par. (1) provisions respecting election, status, compensation, etc., of Vice Chairman, for provisions respecting election, status, compensation, etc., of Chairman and Vice Chairman.

Subsec. (e)(1). Pub. L. 97–35, §1225(c), inserted reference to services rendered by a Vice Chairman, and struck out reference to the Chairman.

Subsec. (g). Pub. L. 97–35, §1234(a), struck out par. (5) relating to study and report concerning manner of including personal services of volunteers in determining

non-Federal financial support, and redesignated par. (6) as (5).

Subsec. (i)(1). Pub. L. 97–35, §1226, substituted "May" for "February".

Subsec. (k)(1)(C). Pub. L. 97–35, §1227(a), extended authorization of appropriations through 1986.

Subsec. (k)(2)(B). Pub. L. 97–35, §1227(b), substituted fiscal year basis for disbursement for quarterly basis.

Subsec. (k)(3)(A). Pub. L. 97–35, §1227(c)(1), amended subpar. (A) generally, substituting provisions mandating the establishment by the Corporation of an annual budget for use in allocating amounts from the Fund, setting out the allocation and distribution formulae, and providing for interconnecting facilities and operations costs for making public television and radio programs available to public broadcast stations for former provisions which had directed the Corporation to reserve for distribution among the licensees and permittees of public television and radio stations an amount equal to (i) not less than 40 percent of the funds disbursed by the Corporation from the Fund under this section in each fiscal year in which the amount disbursed was $88,000,000 or more, but less than $121,000,000; (ii) not less than 45 percent of such funds in each fiscal year in which the amount disbursed was $121,000,000 or more, but less than $160,000,000; and (iii) not less than 50 percent of such funds in each fiscal year in which the amount disbursed was $160,000,000 or more.

Subsec. (k)(3)(B)(i). Pub. L. 97–35, §1227(c)(2), amended cl. (i) generally, substituting "The Corporation shall utilize the funds allocated pursuant to subparagraph (A)(ii)(II) and subparagraph (A)(iii)(II), and a significant portion of such other funds as may be available to the Corporation, to make grants and contracts for production of public television or radio programs by independent producers and production entities and public telecommunications entities, and for acquisition of such programs by public telecommunications entities. Of the funds utilized pursuant to this clause, a substantial amount shall be reserved for distribution to independent producers and production entities for the production of programs" for "The Corporation shall establish an annual budget according to which it shall made grants and contracts for production of public television or radio programs by independent producers and production entities and public telecommunications entities, for acquisition of such programs by public telecommunications entities, for interconnection facilities and operations, for distribution of funds among public telecommunications entities, and for engineering and program-related research. A significant portion of funds available under the budget established by the Corporation under this subparagraph shall be used for funding the production of television and radio programs. Of such portion, a substantial amount shall be reserved for distribution to independent producers and production entities for the production of programs".

Subsec. (k)(3)(B)(ii). Pub. L. 97–35, §1227(c)(3)(A), amended cl. (ii) generally, substituting "available for distribution under clause (i)" for "contained in the annual budget established by the Corporation under clause (i)".

Subsec. (k)(3)(B)(iii), (iv). Pub. L. 97–35, §1227(c)(3)(B), struck out cls. (iii) and (iv) which had provided, respectively, that "During each of the fiscal years 1981, 1982, and 1983, the annual budget established by the Corporation under clause (i) shall consist of not less than 95 percent of the funds made available by the Secretary of the Treasury to the Corporation pursuant to paragraph (2)(A)" and that "In determining the amount of funds which shall be made available for radio programming and operations under this subparagraph, the Corporation shall take into account the increased financial needs relating to radio programming and operations resulting from the expansion and development of noncommercial radio broadcast station facilities through the use of funds made available pursuant to section 393(d) of this title".

Subsec. (k)(6)(A). Pub. L. 97–35, §1227(d)(1), amended subpar. (A) generally, substituting "The Corporation,

A 103

in consultation with public radio stations and with National Public Radio (or any successor organization), shall determine the percentage of funds allocated under subclause (I) and subclause (II) of paragraph (3)(A)(iii) for each fiscal year. The Corporation, in consultation with such organizations, also shall conduct an annual review of the criteria and conditions applicable to such allocations'' for ''The Corporation, in consultation with public television and radio licensees, shall review annually the percentage of funds reserved pursuant to paragraph (3)(A), and the criteria and conditions regarding the division and distribution of such funds among public television and radio stations''.

Subsec. (k)(6)(B). Pub. L. 97–35, § 1227(d)(2), amended subpar. (B) generally, striking out provision that the funds reserved for public broadcast stations pursuant to paragraph (3)(A) be divided into two portions, one to be distributed among radio stations and one to be distributed among television stations in the provisions preceding cl. (i) and inserting ''under paragraph (3)(A)(ii)(I)'' and ''under paragraph (3)(A)(iii)(I)''.

Subsec. (k)(7). Pub. L. 97–35, § 1227(e), amended par. (7) generally, substituting provisions relating to use of funds distributed for provisions limiting amount of funds distributed.

Subsec. (k)(8). Pub. L. 97–35, § 1227(f), amended par. (8) generally, substituting provisions relating to refunding funds to the Corporation for provisions relating to the use of funds distributed.

Subsec. (k)(9). Pub. L. 97–35, § 1227(g), in subpar. (A) substituted ''to assure that (i) its advisory board meets at regular intervals; (ii) the members of its advisory board regularly attend the meetings of the advisory board; and (iii) the composition of its advisory board are reasonably representative of the diverse needs'' for ''to assure that the composition of its advisory board reasonably reflects the diverse needs'' and in subpars. (A), (D), and (E) inserted provisions respecting stations owned and operated by a State, a political or special purpose subdivision of a State or a public agency.

Subsec. (l). Pub. L. 97–35, § 1228, inserted provisions in par. (1)(A) respecting shared auditing arrangements, and substituted in par. (3)(B)(ii) and (iii) provisions relating to biannual audits and accompanying report, for provisions relating to annual audits and accompanying report.

1978—Subsec. (a). Pub. L. 95–567, § 301, substituted ''public'' for ''noncommercial educational'' and ''telecommunications'' for ''radio and television'' wherever appearing and inserted provisions relating to the growth and development of nonbroadcast telecommunications technologies for the delivery of public telecommunications services.

Subsec. (d)(1). Pub. L. 95–567, § 302, struck out provision authorizing the President to designate one of the members first appointed to the Board as Chairman.

Subsec. (e)(1). Pub. L. 95–567, § 303(a), inserted provision which regulated the rate of compensation an officer or employee of the Corporation could receive.

Subsec. (g). Pub. L. 95–567, § 304, amended subsec. (g) generally, substituting ''public telecommunications'' for ''educational broadcasting'', ''noncommercial educational television or radio'', or ''program production'' wherever appearing, authorizing panel of outside experts to evaluate programs, authorizing Corporation to use its own judgment when dealing with programming, and striking out provision dealing with the creation of new noncommercial educational broadcast stations.

Subsec. (h). Pub. L. 95–567, § 305, designated existing provisions as par. (1) and added par. (2).

Subsec. (i). Pub. L. 95–567, § 306, revised and restructured subsection and, as so restructured, substituted ''September 30'' for ''June 30'', ''15th day of February'' for ''31st day of December'', and inserted provisions comprising pars. (1)(B) and (C).

Subsec. (k). Pub. L. 95–567, § 307(a), completely revised and restructured subsec. (k) and, in so doing, inserted provisions establishing an annual budget, authorizing funds for the fiscal years 1978 to 1983, requiring funds be disbursed on a quarterly basis, requiring that all meet-

ings of entities receiving funds be open to the public, and that the financial records of such entities be available for public examination.

Subsec. (l)(3). Pub. L. 95–567, § 308, completely revised and restructured par. (3) and, in so doing, inserted provisions requiring an annual audit, furnishing a copy of the audit report, and use of uniform accounting principals.

1975—Subsec. (g)(2)(H). Pub. L. 94–192, § 3, inserted ''and the use of nonbroadcast communications technologies for the dissemination of educational television or radio programs'' after ''broadcasting''.

Subsec. (i). Pub. L. 94–192, § 4, directed that officers and directors be available to testify before Congressional committees concerning the annual fiscal report, audit report, or any other matter.

Subsec. (k)(3) to (7). Pub. L. 94–192, § 2, added pars. (3) to (7).

1973—Subsec. (k)(1). Pub. L. 93–84, § 1(a), substituted authorization of appropriation of $50,000,000 and $60,000,000 for the fiscal years ending June 30, 1974 and June 30, 1975, respectively, for authorization of appropriation of $40,000,000 for the fiscal year ending June 30, 1973.

Subsec. (k)(2). Pub. L. 93–84, § 1(b), substituted ''1975'' for ''1973''.

1972—Subsec. (k)(1). Pub. L. 92–411 struck out authorization of appropriation for fiscal years ending June 30, 1969, June 30, 1970, and the two succeeding fiscal years and provided for an appropriation of $40,000 for fiscal year ending June 30, 1973.

Subsec. (k)(2). Pub. L. 92–411 substituted ''June 30, 1973'' for ''June 30, 1972''.

1970—Subsec. (k). Pub. L. 91–437 authorized appropriations of $20,000,000 for the fiscal year ending June 30, 1970, and $30,000,000 for each of the two succeeding fiscal years, and further authorized appropriation of amounts equal to the amount of total grants, donations, bequests, or other contributions from non-Federal sources received by the Corporation during each fiscal year with a maximum limit of $5,000,000 for any fiscal year.

1969—Subsec. (k)(1). Pub. L. 91–97, § 3(a), inserted ''and for the next fiscal year the sum of $20,000,000'' after ''the sum of $9,000,000''.

Subsec. (k)(2). Pub. L. 91–97, § 3(b), inserted ''or the next fiscal year'' after ''the fiscal year ending June 30, 1969,''.

1968—Subsec. (k). Pub. L. 90–294 substituted ''1969'' for ''1968''.

EFFECTIVE DATE OF 1999 AMENDMENT

Pub. L. 106–113, div. B, § 1000(a)(9) [title V, § 5002(b)], Nov. 29, 1999, 113 Stat. 1536, 1501A–593, provided that: ''The amendment made by subsection (a) [amending this section] shall apply with respect to funds distributed on or after 6 months after the date of the enactment of this Act [Nov. 29, 1999].''

EFFECTIVE DATE OF 1992 AMENDMENT

Section 22 of Pub. L. 102–356 provided that: ''Section 5(a) [amending this section] shall take effect on January 31, 1996. All other provisions of this Act [amending this section and sections 303b, 391, and 393 of this title, enacting provisions set out as notes under this section and sections 303 and 609 of this title, and repealing provisions set out as a note under section 303 of this title] are effective on its date of enactment [Aug. 26, 1992].''

EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by sections 6 and 7(d) of Pub. L. 100–626 effective Oct. 1, 1989, see section 12 of Pub. L. 100–626, set out as a note under section 391 of this title.

EFFECTIVE DATE OF 1981 AMENDMENT

Section 1227(c)(4) of Pub. L. 97–35 provided that: ''The amendments made in this subsection [amending this section] shall apply to fiscal years beginning after September 30, 1983.''

Section 1227(d)(3) of Pub. L. 97–35 provided that: "The amendments made in this subsection [amending this section] shall apply to fiscal years beginning after September 30, 1983."

EFFECTIVE DATE OF 1978 AMENDMENT

Amendment by Pub. L. 95–567 effective Nov. 2, 1978, see section 403 of Pub. L. 95–567, set out as a note under section 390 of this title.

TERMINATION OF REPORTING REQUIREMENTS

For termination, effective May 15, 2000, of provisions of law requiring submittal to Congress of any annual, semiannual, or other regular periodic report listed in House Document No. 103–7 (in which reports required under subsecs. (i), (k)(3)(B)(iii)(V)(1st sentence), and (m) of this section are listed as the 10th through 13th items on page 199), see section 3003 of Pub. L. 104–66, as amended, set out as a note under section 1113 of Title 31, Money and Finance.

TRANSITION RULES RELATING TO TERM OF OFFICE OF BOARD OF DIRECTORS OF CORPORATION FOR PUBLIC BROADCASTING

Section 5(c) of Pub. L. 102–356 provided that:

"(1) With respect to the three offices whose terms are prescribed by law to expire on March 26, 1992, the term for each such office immediately after that date shall expire on January 31, 1998.

"(2) With respect to the two offices whose terms are prescribed by law to expire on March 1, 1994, the term for each of such offices immediately after that date shall expire on January 31, 2000.

"(3) With respect to the five offices whose terms are prescribed by law to expire on March 26, 1996—

"(A) one such office, as selected by the President, shall be abolished on January 31, 1996;

"(B) the term immediately after March 26, 1996, for another such office, as designated by the President, shall expire on January 31, 2000; and

"(C) the term for each of the remaining three such offices immediately after March 26, 1996, shall expire on January 31, 2002.

"(4) As used in this subsection, the term 'office' means an office as a member of the Board of Directors of the Corporation for Public Broadcasting."

OBJECTIVITY AND BALANCE POLICY, PROCEDURES, AND REPORT

Section 19 of Pub. L. 102–356 provided that: "Pursuant to the existing responsibility of the Corporation for Public Broadcasting under section 396(g)(1)(A) of the Communications Act of 1934 (47 U.S.C. 396(g)(1)(A)) to facilitate the full development of public telecommunications in which programs of high quality, diversity, creativity, excellence, and innovation, which are obtained from diverse sources, will be made available to public telecommunications entities, with strict adherence to objectivity and balance in all programs or series of programs of a controversial nature, the Board of Directors of the Corporation shall—

"(1) review the Corporation's existing efforts to meet its responsibility under section 396(g)(1)(A);

"(2) after soliciting the views of the public, establish a comprehensive policy and set of procedures to—

"(A) provide reasonable opportunity for members of the public to present comments to the Board regarding the quality, diversity, creativity, excellence, innovation, objectivity, and balance of public broadcasting services, including all public broadcasting programming of a controversial nature, as well as any needs not met by those services;

"(B) review, on a regular basis, national public broadcasting programming for quality, diversity, creativity, excellence, innovation, objectivity, and balance, as well as for any needs not met by such programming;

"(C) on the basis of information received through such comment and review, take such steps in

awarding programming grants pursuant to clauses (ii)(II), (iii)(II), and (iii)(III) of section 396(k)(3)(A) of the Communications Act of 1934 (47 U.S.C. 396(k)(3)(A)) that it finds necessary to meet the Corporation's responsibility under section 396(g)(1)(A), including facilitating objectivity and balance in programming of a controversial nature; and

"(D) disseminate among public broadcasting entities information about its efforts to address concerns about objectivity and balance relating to programming of a controversial nature so that such entities can utilize the Corporation's experience in addressing such concerns within their own operations; and

"(3) starting in 1993, by January 31 of each year, prepare and submit to the President for transmittal to the Congress a report summarizing its efforts pursuant to paragraphs (1) and (2)."

CONSUMER INFORMATION; DISCLOSURE OF FUNDING

Section 20 of Pub. L. 102–356 provided that: "Prior to the expiration of the 90-day period following the date of the enactment of this Act [Aug. 26, 1992], the Corporation for Public Broadcasting, in consultation with representatives of public broadcasting entities, shall develop guidelines to assure that program credits for public television programs that receive production funding directly from the Corporation for Public Broadcasting adequately disclose that all or a portion of the cost of producing such program was paid for by funding from the Corporation for Public Broadcasting, and that indicates in some manner that the Corporation for Public Broadcasting is partially funded from Federal tax revenues."

INDEPENDENT PRODUCTION SERVICE FUNDING

Section 21 of Pub. L. 102–356 provided that: "In making available funding pursuant to authorizations under this Act [see Short Title of 1992 Amendment note set out under section 609 of this title], any independent production service established under section 396(k) of the Communications Act of 1934 (47 U.S.C. 396(k)) shall, to the maximum extent practicable and consistent with the provisions of the Communications Act of 1934 [47 U.S.C. 151 et seq.], provide such funding to eligible recipients and projects representing the widest possible geographic distribution, with the objective of providing funding to eligible recipients and projects in each State from which qualified proposals are received over the course of such authorizations."

SATELLITE REPLACEMENT NEEDS; REPORT TO CONGRESS

Section 4(b) of Pub. L. 100–626 directed Corporation for Public Broadcasting, on behalf of the public radio and public television licensees and permittees (or their designated representatives), to submit to Congress on or before Mar. 1, 1990, a report by such licensees or permittees (or their representatives) detailing the satellite replacement needs of public radio and public television, the difference in cost between leasing satellite transponder capacity and buying such capacity, and the availability of private sector rather than Federal financing.

CONTINUATION OF INDIVIDUALS SERVING ON THE BOARD OF DIRECTORS; REDUCTION IN MEMBERSHIP OF BOARD; POLITICAL AFFILIATION OF BOARD APPOINTEES; ABOLITION OF FIVE OFFICES ON MARCH 1, 1984

Section 1225(a)(2) of Pub. L. 97–35, as amended by Pub. L. 97–410, §4, Jan. 3, 1983, 96 Stat. 2044, provided that:

"(A) The amendment made in paragraph (1) [amending this section] shall not affect the continuation in office of any individual serving on the Board of Directors of the Corporation for Public Broadcasting on the date of the enactment of this Act [Aug. 13, 1981].

"(B) Notwithstanding the provisions of subsection (c) of section 396 of the Communications Act of 1934 [subsec. (c) of this section], in the case of the offices of director the terms of which expired March 1982, persons

appointed to fill two of such vacancies existing as of December 13, 1982, shall be appointed for terms which shall expire on March 1, 1984 and shall not be respresentative [sic] of the political party having a majority of the directors of the Board on December 13, 1982. Persons appointed for a term beginning March 1, 1984, to fill the vacancies occurring in such offices the terms of which, by reason of the preceding sentence, expire on March 1, 1984, shall not be filled by persons representing the political party having a majority of the directors of the Board on March 1, 1984. Persons appointed on or after March 1, 1984, to fill vacancies in the two such offices shall be appointed for terms of five years. On March 1, 1984, there are abolished those five offices of director the terms of which, without application of the preceding provisions of this paragraph, expire on such date. In administering the provisions of this paragraph a director is a minority member of the Board if he is not a member of the political party to which the majority of the directors of the Board are members.''

TEMPORARY COMMISSION ON ALTERNATIVE FINANCING FOR PUBLIC TELECOMMUNICATIONS; COMPOSITION; PERSONNEL; FUNCTIONS; REPORT; DEMONSTRATION PROGRAMS FOR DETERMINING FEASIBILITY OF PERMITTING PUBLIC TELEVISION STATIONS AND PUBLIC RADIO STATION LICENSEES TO BROADCAST ADVERTISING ANNOUNCEMENTS

Sections 1232 and 1233 of Pub. L. 97–35 established a Temporary Commission on Alternative Financing for Public Telecommunications for the purpose of conducting a study, to be submitted to Congress not later than July 1, 1982, regarding options which may be available to public telecommunications entities, the Public Broadcasting Service, and National Public Radio with respect to development of sources of revenue in addition to sources available to such entities on Aug. 13, 1981, further provided for membership of the Temporary Commission as well as other administrative matters, further authorized the Temporary Commission to establish a demonstration program to allow broadcast advertising announcements on public radio and television stations, which would run from Jan. 1, 1982, to June 30, 1983, further directed the Temporary Commission to submit to Congress, not later than Oct. 1, 1983, a report on the demonstration program, and further provided for the termination of the Temporary Commission 90 days after the submission of this report to Congress.

COMPENSATION OF OFFICERS AND EMPLOYEES

Section 303(b) of Pub. L. 95–567 provided that: "The amendment made by subsection (a) [amending this section] shall not be construed to reduce the annual rate of pay of any officer or employee of the Corporation for Public Broadcasting in any case in which (1) such officer or employee was appointed or named to any position in the Corporation before the date of the enactment of this Act [Nov. 2, 1978]; and (2) the annual rate of pay for such position, as in effect on such date of enactment, exceeds the maximum rate of pay established in section 396(e)(1) of the Communications Act of 1934 [subsec. (e)(1) of this section], as amended by subsection (a)."

Section 307(b) of Pub. L. 95–567 provided that: "Section 396(k)(10) of the Communications Act of 1934 [subsec. (k)(10) of this section], as added by subsection (a), shall not be construed to reduce the annual rate of pay of any officer or employee of the Public Broadcasting Service or National Public Radio (or any successor organization) in any case in which (1) such officer or employee was appointed or named to any position in the Public Broadcasting Service or National Public Radio (or any successor organization) before the date of the enactment of this Act [Nov. 2, 1978]; and (2) the annual rate of pay for such position, as in effect on such date of enactment, exceeds the maximum rate of pay established in section 396(k)(10) of the Communications Act of 1934 [subsec. (k)(10) of this section], as added by subsection (a)."

SUBPART E—GENERAL PROVISIONS

§ 397. Definitions

For the purposes of this part—

(1) The term "construction" (as applied to public telecommunications facilities) means acquisition (including acquisition by lease), installation, and modernization of public telecommunications facilities and planning and preparatory steps incidental to any such acquisition, installation, or modernization.

(2) The term "Corporation" means the Corporation for Public Broadcasting authorized to be established in subpart D.

(3) The term "interconnection" means the use of microwave equipment, boosters, translators, repeaters, communication space satellites, or other apparatus or equipment for the transmission and distribution of television or radio programs to public telecommunications entities.

(4) The term "interconnection system" means any system of interconnection facilities used for the distribution of programs to public telecommunications entities.

(5) The term "meeting" means the deliberations of at least the number of members of a governing or advisory body, or any committee thereof, required to take action on behalf of such body or committee where such deliberations determine or result in the joint conduct or disposition of the governing or advisory body's business, or the committee's business, as the case may be, but only to the extent that such deliberations relate to public broadcasting.

(6) The terms "noncommercial educational broadcast station" and "public broadcast station" mean a television or radio broadcast station which—

(A) under the rules and regulations of the Commission in effect on November 2, 1978, is eligible to be licensed by the Commission as a noncommercial educational radio or television broadcast station and which is owned and operated by a public agency or nonprofit private foundation, corporation, or association; or

(B) is owned and operated by a municipality and which transmits only noncommercial programs for education purposes.

(7) The term "noncommercial telecommunications entity" means any enterprise which—

(A) is owned and operated by a State, a political or special purpose subdivision of a State, a public agency, or a nonprofit private foundation, corporation, or association; and

(B) has been organized primarily for the purpose of disseminating audio or video noncommercial educational and cultural programs to the public by means other than a primary television or radio broadcast station, including, but not limited to, coaxial cable, optical fiber, broadcast translators, cassettes, discs, microwave, or laser transmission through the atmosphere.

(8) The term "nonprofit" (as applied to any foundation, corporation, or association) means a foundation, corporation, or association, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual.

A 106