(F) to hire or accept the voluntary services of consultants, experts, advisory boards, and panels to aid the Corporation in carrying out the purposes of this section;

(G) to encourage the creation of new noncommercial educational broadcast stations in order to enhance such services on a local, State, regional, and national basis;

(H) conduct (directly or through grants or contracts) research, demonstrations, or training in matters related to noncommercial educational television or radio broadcasting *and the use of nonbroadcast communications technologies for the dissemination of educational television or radio programs.*

(3) To carry out the foregoing purposes and engage in the foregoing activities, the Corporation shall have the usual powers conferred upon a nonprofit corporation by the District of Columbia Nonprofit Corporation Act, except that the Corporation may not own or operate any television or radio broadcast station, system, or network, community antenna television system, or interconnection or program production facility.

AUTHORIZATION FOR FREE OR REDUCED RATE INTERCONNECTION SERVICE

(h) Nothing in this chapter or in any other provision of law shall be construed to prevent United States communications common carriers from rendering free or reduced rate communications interconnection services for noncommercial educational television or radio services, subject to such rules and regulations as the Federal Communications Commission may prescribe.

REPORT TO CONGRESS

(i) The Corporation shall submit an annual report for the preceding fiscal year ending June 30 to the President for transmittal to the Congress on or before the 31st day of December of each year. The report shall include a comprehensive and detailed report of the Corporation's operations, activities, financial condition, and accomplishments under this section and may include such recommendations as the Corporation deems appropriate. *The officers and directors of the Corporation shall be available to testify before appropriate committees of the Congress with respect to such report, the report of any audit made by the Comptroller General pursuant to subsection 396(l), or any other matter which any such committee may determine.*

RIGHT TO REPEAL, ALTER, OR AMEND

(j) The right to repeal, alter, or amend this section at any time is expressly reserved.

FINANCING

(k)(1) There are authorized to be appropriated for expenses of the Corporation $50,000,000 for the fiscal year ending June 30, 1974, and $60,000,000 for the fiscal year ending June 30, 1975.

(2) In addition to the sums authorized to be appropriated by paragraph (1) of this subsection, there are authorized to be appropriated for payment to the Corporation for each fiscal year during the period

July 1, 1970, to June 30, 1975, amounts equal to the amount of total grants, donations, bequests, or other contributions (including money and the fair market value of any property) from non-Federal sources received by the Corporation under subsection (g)(2)(A) of this section during such fiscal year; except that the amount appropriated pursuant to this paragraph for any fiscal year may not exceed $5,000,000.

(3) *There is hereby established in the Treasury a fund which shall be known as the "Public Broadcasting Fund," administered by the Secretary of the Treasury. There are authorized to be appropriated to such fund for each of the fiscal years during the period beginning July 1, 1975, and ending September 30, 1978, an amount equal to 40 per centum of the total amount of non-Federal financial support received by public broadcasting entities during the fiscal year second preceding each such fiscal year, for the period July 1, 1976, through September 30, 1976, an amount equal to 10 per centum of the total amount of non-Federal financial support received by public broadcasting entities during the fiscal year ending June 30, 1975, and for each of the two fiscal years ending during the period beginning October 1, 1978, and ending September 30, 1980, an amount equal to 33⅓ per centum of the total amount of non-Federal financial support received by public broadcasting entities during the fiscal year second preceding each such fiscal year; except that the amount so appropriated shall not exceed $88,000,000 for the fiscal year ending June 30, 1976; $22,000,000 for the period July 1, 1976, through September 30, 1976; $103,000,000 for the fiscal year ending September 30, 1977; $121,000,000 for the fiscal year ending September 30, 1978; $140,000,000 for the fiscal year ending September 30, 1979; and $160,000,000 for the fiscal year ending September 30, 1980.*

(4) *There are hereby appropriated to the Public Broadcasting Fund, out of any moneys in the Treasury not otherwise appropriated, for each of the fiscal years during the period beginning July 1, 1975, and ending September 30, 1980, and for the period July 1, 1976, through September 30, 1976, such amounts as are authorized to be appropriated by paragraph (3) of this subsection, which shall remain available until expended, and a significant portion of such funds, including those funds distributed pursuant to paragraph 5 of this subsection, shall be utilized for the development and dissemination of instructional programming. Such funds shall be used solely for the expenses of the Corporation. The Corporation shall determine the amount of non-Federal financial support received by public broadcasting entities during each of the fiscal years indicated in paragraph (3) of this subsection for the purpose of determining the amount of each authorization, and shall certify such amount to the Secretary of the Treasury. Upon receipt of such certification, the Secretary of the Treasury shall disburse from the Public Broadcasting Fund the amount appropriated to the fund for each of the fiscal years and for the period July 1, 1976, through September 30, 1976, pursuant to the provisions of this subsection.*

(5) *The Corporation shall reserve for distribution among the licensees and permittees of noncommercial educational broadcast stations that are on the air an amount equal to not less than 40 per centum of the funds disbursed to the Corporation from the Public Broadcasting Fund during the period July 1, 1975, through September 30, 1976, and in each fiscal year in which the amount disbursed is $88,000,000 or more, but less than $121,000,000; not less than 45 per centum in each fiscal year in which the*



*amount disbursed is $121,000,000 or more, but less than $160,000,000; and not less than 50 per centum in each fiscal year in which the amount disbursed is $160,000,000.*

*(6) The Corporation shall, after consultation with licensees and permittees of noncommercial educational broadcast stations that are on-the-air, establish, and review annually, criteria and conditions regarding the distribution of funds reserved pursuant to paragraph (5) of this subsection, as set forth below:*

*(A) The total amount of funds shall be divided into two portions, one to be distributed among radio stations, and one to be distributed among television stations. The Corporation shall make a basic grant from the portion reserved for television stations to each licensee and permittee of a noncommercial educational television station that is on-the-air. The balance of the portion reserved for radio stations shall be distributed to licensees and permittees of such stations in accordance with eligibility criteria that promote the public interest in noncommercial educational broadcasting, and on the basis of a formula designed to—*

*(i) provide for the financial need and requirements of stations in relation to the communities and audiences such stations undertake to serve;*

*(ii) maintain existing, and stimulate new, sources of non-Federal financial support for stations by providing incentives for increases in such support; and*

*(iii) assure that each eligible licensee and permittee of a noncommercial educational radio station receives a basic grant.*

*(B) No distribution of funds pursuant to this subsection shall exceed, in any fiscal year, one-half of a licensee's or permittee's total non-Federal financial support during the fiscal year second preceding the fiscal year in which such distribution is made.*

*(7) Funds distributed pursuant to this subsection may be used at the discretion of stations for purposes related to the provision of educational television and radio programing, including but not limited to the following: producing, acquiring, broadcasting, or otherwise disseminating educational television or radio programs; procuring national or regional program distribution services that make educational television or radio programs available for broadcast or other dissemination at times chosen by stations; acquiring, replacing, and maintaining facilities, and real property used with facilities, for the production, broadcast, or other dissemination of educational television and radio programs; developing and using nonbroadcast communications technologies for educational television or radio programing purposes.*

RECORDS AND AUDIT

(l)(1)(A) The accounts of the Corporation shall be audited annually in accordance with generally accepted auditing standards by independent certified public accountants or independent licensed public accountants certified or licensed by a regulatory authority of a State or other political subdivision of the United States. The audits shall be conducted at the place or places where the accounts of the Corporation are normally kept. All books, accounts, financial records, reports, files, and all other papers, things, or property belonging to or in use by the Corporation and necessary to facilitate the audits shall be made



available to the person or persons conducting the audits; and full facilities for verifying transactions with the balances or securities held by depositories, fiscal agents and custodians shall be afforded to such person or persons.

(B) The report of each such independent audit shall be included in the annual report required by subsection (i) of this section. The audit report shall set forth the scope of the audit and include such statements as are necessary to present fairly the Corporation's assets and liabilities, surplus or deficit, with an analysis of the changes therein during the year, supplemented by a reasonably detailed statement of the Corporation's income and expenses during the year, and a statement of the sources and application of funds, together with the independent auditor's opinion of those statements.

(2)(A) The financial transactions of the Corporation for any fiscal year during which the Federal funds are available to finance any portion of its operations may be audited by the General Accounting Office in accordance with the principles and procedures applicable to commercial corporate transactions and under such rules and regulations as may be prescribed by the Comptroller General of the United States. Any such audit shall be conducted at the place or places where accounts of the Corporation are normally kept. The representative of the General Accounting Office shall have access to all books, accounts, records, files, and all other papers, things, or property belonging to or in use by the Corporation pertaining to its financial transactions and necessary to facilitate the audit, and they shall be afforded full facilities for verifying transactions with the balances or securities held by depositories, fiscal agents, and custodians. All such books, accounts, records, reports, files, papers and property of the Corporation shall remain in possession and custody of the Corporation.

(B) A report of each such audit shall be made by the Comptroller General to the Congress. The report to the Congress shall contain such comments and information as the Comptroller General may deem necessary to inform Congress of the financial operations and condition of the Corporation, together with such recommendations with respect thereto as he may deem advisable. The report shall also show specifically any program, expenditure, or other financial transaction or undertaking observed in the course of the audit, which, in the opinion of the Comptroller General, has been carried on or made without authority of law. A copy of each report shall be furnished to the President, to the Secretary, and to the Corporation at the time submitted to the Congress.

(3)(A) Each recipient of assistance by grant or contract, other than a fixed price contract awarded pursuant to competitive bidding procedures, under this section shall keep such records as may be reasonably necessary to fully disclose the amount and the disposition by such recipient of the proceeds of such assistance, the total cost of the project or undertaking in connection with which such assistance is given or used, and the amount and nature of that portion of the costs of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit.

(B) The Corporation or any of its duly authorized representatives, shall have access for the purpose of audit and examination to any books, documents, papers, and records of the recipient that are per-

tinent to assistance received under this section. The Comptroller General of the United States or any of his duly authorized representatives shall also have access thereto for such purpose during any fiscal year for which Federal funds are available to the Corporation.

## SUBPART C—GENERAL

### DEFINITIONS

SECTION 397. For the purposes of sections 390–399 of this title—

(1) The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Trust Territory of the Pacific Islands.

(2) The term "construction", as applied to educational television broadcasting facilities, or educational radio broadcasting facilities means the acquisition and installation of transmission apparatus (including towers, microwave equipment, boosters, translators, repeaters, mobile equipment, and video-recording equipment) necessary for television broadcasting or radio broadcasting, as the case may be, including apparatus which may incidentally be used for transmitting closed circuit television programs, but does not include the construction or repair of structures to house such apparatus. In the case of apparatus the acquisition and installation of which is so included, such term also includes planning therefor.

(3) The term "Secretary" means the Secretary of Health, Education, and Welfare.

(4) The terms "State educational television agency" and "State educational radio agency" mean, with respect to television broadcasting and radio broadcasting, respectively. (A) a board or commission established by State law for the purpose of promoting such broadcasting within a State, (B) a board or commission appointed by the Governor of a State for such purpose if such appointment is not inconsistent with State law, or (C) a State officer or agency responsible for the supervision of public elementary or secondary education or public higher education within the State which has been designated by the Governor to assume responsibility for the promotion of such broadcasting; and, in the case of the District of Columbia, the term "Governor" means the Board of Commissioners of the District of Columbia and, in the case of the Trust Territory of the Pacific Islands, means the High Commissioner thereof.

(5) The term "nonprofit" as applied to any foundation, corporation, or association, means a foundation, corporation, or association, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual.

(6) The term "Corporation" means the Corporation authorized to be established by subpart B of this part.

(7) The term "noncommercial educational broadcast station" means a television or radio broadcast station, which (A) under the rules and regulations of the Federal Communications Commission in effect on the date of enactment of the Public Broadcasting Act of 1967, is eligible to be licensed or is licensed by the Commission as a noncommercial radio or television broadcast station and which is owned and operated by a public agency or nonprofit private foundation, corpora-

tion, or association or (B) is owned and operated by a municipality and which transmits only noncommercial programs for educational purposes.

(8) The term "interconnection" means the use of microwave equipment, boosters, translators, repeaters, communication space satellites, or other apparatus, or equipment for the transmission and distribution of television or radio programs to noncommercial educational television or radio broadcast stations.

(9) The term "educational television or radio programs" means programs which are primarily designed for educational or cultural purposes.

*(10) The term "non-Federal financial support" means the total value of cash and the fair market value of property and services (except for personal services of volunteers) received—*

*(A) as gifts, grants, bequests, donations, or other contributions for the construction or operation of non-commercial educational broadcast stations, or for the production, acquisition, distribution, or dissemination of educational television or radio programs, and related activities, from any source other than (i) the United States or any agency or establishment thereof, or (ii) any public broadcasting entity; or*

*(B) as gifts, donations, contributions, or payments from any State, any agency or political subdivision of a State, or any educational institution, for the construction or operation of noncommercial educational broadcast stations or for the production acquisition, distribution or dissemination of educational television or radio programs, or payments in exchange for services or materials respecting the provision of educational or instructional television or radio programs.*

*(11) The term "public broadcasting entity" means the Corporation, any licensee or permittee of a noncommercial educational broadcast station, or any nonprofit institution engaged primarily in the production, acquisition, distribution or dissemination of educational television and radio programs.*

O