*Ninety Eight Year Lease*, November 27, 1963
*(partially illegible copy produced by Defendant, WTTW)*

Board of Education of the City of Chicago leased "School Land" at
WTTW situs to Chicago Educational Television Association,
at rental rate of $7,500 per year initially, and thereafter at 4% of a
mutually determined fair market value (1963)

## NINETY EIGHT YEAR LEASE

### BOARD OF EDUCATION OF THE CITY OF CHICAGO

### T O

### CHICAGO EDUCATIONAL TELEVISION ASSOCIATION

An Illinois not-for-profit corporation

### PREMISES

### SCHOOL LAND

The West side of N. St. Louis Avenue
opposite the intersection with W. Balmoral Avenue

in

Chicago, Illinois

Term: Commencing January 1, 1964
and Ending December 31, 2061

WTTW 00000

A 155

THIS INDENTURE, made and entered into as of the 27th day of November, A. D. 1963, by and between the BOARD OF EDUCATION OF THE CITY OF CHICAGO, a body politic and corporate, party of the first part (hereinafter sometimes designated as "Lessor") and

**Parties** CHICAGO EDUCATIONAL TELEVISION ASSOCIATION, an Illinois not-for-profit corporation organized and existing under and by virtue of the laws of the State of Illinois, party of the second part (hereinafter sometimes designated as "Lessee"),

WITNESSETH:

## ARTICLE ONE
### Premises and Term

The Lessor, for and in consideration of the payment of the rent as hereinafter set forth and the covenants and agreements, provisions and conditions hereinafter contained on the part of the Lessee, to be paid, kept, performed and fulfilled, has demised and leased and by these Presents does hereby demise and lease unto the Lessee, the following described real estate lying and being in the City of Chicago, County of Cook and State of Illinois, to-wit:

> That part of Lot 13 in the Subdivision of the North half of Section 11, Township 40 North, Range 13 East of the Third Principal Meridian, which lies south of a line which is 1100.00 feet south of and parallel with the South line of W. Bryn Mawr Avenue, which property has a frontage of 195.94 feet on the West side of N. St. Louis Avenue opposite the intersection with W. Balmoral Avenue having an average depth of 628.36 feet, containing approximately 123,121 square feet.

TO HAVE AND TO HOLD the above described real estate, with

**Term** all the rights, privileges, easements and appurtenances thereunto attaching and belonging, unto the Lessee, for and during the term of ninety-eight (98) years, commencing on the first day of January, 1964 and ending on the thirty-first day of December, 206:

WTTW 0000023

paying the rent herein provided for and yielding possession as hereinafter provided.

## ARTICLE TWO

### Rent and Appraisement

Rental
First 10
Year
Period

Section 2.1  In consideration of the leasing of the demised land, the Lessee covenants and agrees with the Lessor as follows, to-wit:

To pay to the Lessor at the office of its controller, or his successor, as rent for the ten (10) year period of the term of said lease, commencing January 1, 1964 and ending December 31, 1973 the sum of Seven Thousand Five Hundred Dollars ($7,500.00) per annum payable in monthly installments of Six Hundred Twenty-five Dollars ($625.00) each in advance.

Appraise-
ment

Section 2.2  And for the purpose of ascertaining, determining and fixing the amount of rent for said demised land for each of the successive ten (10) year periods and the final eight (8) year period from and after the first day of January, 1974, and during the remainder of the term of this lease, it is mutually covenanted and agreed by and between the Lessor and Lessee, that, during the nine (90) day period prior to January 1, 1974, and during the ninety (90 day period prior to the beginning of each and every period of ten years thereafter, commencing on January 1, 1984 and to and including the ten (10) year period commencing January 1, 2044, and during the ninety (90) day period prior to the beginning of the period of eight (8) years commencing on January 1, 2054, and to and including December 31, 2061, the said Lessor shall appoint as an appraiser a discreet person, experienced with respect to real estate values the City of Chicago (not interested as lessee or mortgagee of

-2-

MATTEN 0000024

A157

school property in said city) and shall promptly notify Lessee
in writing of the name and address of the appraiser so appointed
Within ten (10) days after receipt of such notice, Lessee shall
appoint as an appraiser one discreet person, experienced with
respect to real estate values in the City of Chicago (not interest
as Lessee or mortgagee of school property in said city) and shall
promptly notify Lessor in writing of the name and address of the
appraiser so appointed. The two appraisers, thus appointed, shall
within thirty (30) days after appointment of such second appraiser
meet and select a third appraiser, who shall likewise be a discreet
person, experienced with respect to real estate values in the City
of Chicago and not interested as lessee or mortgagee of school
property in said city. If, for any cause, the said appraisers
appointed by the Lessor and Lessee, respectively, fail or refuse to
appoint the third appraiser, or cannot agree upon the selection of
the third appraiser, within such thirty (30) days after the appoint
ment of such second appraiser, the person, who is then the senior
judge, in point of tenure in office, of the United States Court of
general original jurisdiction, sitting in the judicial district
or division in which the City of Chicago is situated, shall, at the
request of either the Lessor or Lessee, be authorized and empowere
to name and appoint, as soon as practicable, the third appraiser,
shall be a discreet person, experienced with respect to real estat
values in the City of Chicago and not interested as lessee or
mortgagee of school property in said city. Upon the due appointme
of all three appraisers the appraisers shall promptly cause notic
of such fact, and of the name and address of the third appraiser,
to be served upon both Lessor and Lessee. The three appraisers t

-3-

appointed and selected shall constitute the appraisal committee to
appraise, under oath first duly taken, the fair market value of said
demised land, as of the time of appointment of the first such
appraiser, exclusive of any buildings or improvements at any time
located thereon and without taking into account any effect on such
value of the existence of this lease or of the fact that the demised
land is tax exempt, if it then is tax exempt. The person appointed
appraiser by the Lessor shall act as the chairman of said appraiser
and shall call their meetings and preside thereat. Said three (3)
appraisers, or (if all three such appraisers shall be unable to
agree on such appraisal within twenty (20) days after appointment
the third appraiser) any two of such appraisers, shall have power
make and report such appraisal, and shall make and report such
appraisal within thirty (30) days after appointment of the third
appraiser, and the appraisal made and reported by at least two
(2) of said three (3) appraisers shall be deemed to be the apprais
and the appraised fair market value of said demised land. If at
least two (2) of such three (3) appraisers shall be unable to agre
on such appraisal within such thirty (30) days, then each of said
three (3) appraisers shall, within ten (10) days after the expirat
of such thirty (30) days, make and report his separate appraisal
the numerical average of the separate appraisals of such fair mar
value of said demised land, made by each of said three (3) apprai
shall be deemed to be the appraisal and the appraised fair market
value of said demised land. Any such report of appraisers shall
set forth in detail the figures and other facts and consideration
upon which such report is based. The cost of each and every
appraisement made hereunder shall be borne and paid in equal part

-4-

WTTW 0000026

by the Lessor and the Lessee and, in the event either party shall
pay the entire cost of any such appraisement, said party so paying
shall have a right of action (or, if the party so paying so elects,
a right of setoff) against the other party hereto for the one-half
part of said costs.

In case any person, appointed appraiser as hereinabove provided,
or his successor, shall neglect, omit or refuse to act as appraiser
or to make or report an appraisal in accordance with the provisions
of this lease, the Lessor, upon evidence satisfactory to itself,
may remove (or, in case of failure so to do within ten (10) days
after occasion for removal has arisen and ten (10) days' written
notice from the Lessee to the Lessor, the Lessee, upon evidence
satisfactory to itself, may remove) such person for such neglect,
omission, or refusal to act as appraiser or to make or report an
appraisal, and within ten (10) days after written notice of such
removal is given to the other party, or within ten (10) days after
the death or resignation, before an appraisal is made, of any person
appointed appraiser, or his successor, the vacancy or vacancies,
so occurring (either by reason of removal or by reason of such death
or resignation of any person appointed appraiser, or his successor)
shall be promptly filled, in like manner as hereinbefore provided,
by the appointment by the same party or person, who appointed such
appraiser in the first instance, of an appraiser with the same
qualifications and with the same power and authority as if such
appraiser had been appointed in the first instance. In the event
either the Lessor or Lessee shall fail to appoint an appraiser,
when required, respectively, so to do under any provisions of
this Section 2.2 and after thirty (30) days' written notice so

-5-

WTTW 0000027

to do from the other party, such judge, upon request of the other party, may appoint an appraiser with the same qualifications as the appraiser whom the Lessor or Lessee, as the case may be, was entitled to appoint hereunder and the appraiser so appointed, shall have the same power and authority as he would have had if appointed by the party which failed to appoint an appraiser.

It is hereby declared by the parties hereto that it is not the purpose of this lease that the persons, appointed as appraisers hereunder, or any of them, shall be the representative of either of the parties hereto, and that, notwithstanding anything in this lease contained, the persons, who shall at any time be appointed hereunder to appraise the fair market value of said demised land, as aforesaid shall, at all times and under all circumstances, be held to be appraisers and not arbitrators, and shall not be bound to give notice of their meetings or proceedings to the parties hereto.

The report of such fair market value of said demised land, as so appraised by said appraisers, shall be made in writing duly signed and certified, in duplicate, by said appraisers, and within forty (40) days after the last appraiser has been appointed one such report shall be filed in the office of the Controller of said Lessor, or his successor, subject to the inspection of all persons interested therein, and the other such report shall be delivered to the Manager of Real Estate of the Lessee or other office designated by Lessee.

**Rental for 10 Year Periods After First 10 Year Period**  **Section 2.1**  Upon such appraised valuation of the demised so reported and filed as foresaid, shall be calculated four per (4%) thereof, and such amount, equal to four per cent (4%) of su

-6-

WTTW 0000028

A161

appraised valuation, shall be the yearly rent, reserved upon said demised land for the respective period of the within lease for which such appraisal shall have been made.

**Section 2.4** All rent provided for in this Lease shall be paid in monthly installments, in advance, on the first day of each month in each and every year during the said demised term. Until an appraisal as required in this lease shall have been made and become effective, as hereinabove provided, the Lessee shall pay rent at the same yearly rate as was payable during the immediately preceding period, and, when an appraisal applicable to such current period shall have been so made and become effective, the Lessee shall pay to the Lessor any additional amount of rent due, pursuant to such appraisal, for the elapsed portion of such current period, or the Lessor shall refund to the Lessee (or the Lessee may set off against future rent payments) any amount, paid by the Lessee as rent for the elapsed portion of such current period in excess of the amount due pursuant to such appraisal.

Rental

Payable
Monthly

## ARTICLE THREE

### Taxes and Assessments

**Section 3.1** As a further consideration for the leasing aforesaid, the Lessee further covenants, promises and agrees to bear, pay and discharge in addition to the rents specified, all water rates, taxes, charges for revenue and otherwise, assessments and levies, general and special, ordinary and extraordinary, of every name, nature and kind whatsoever, which may be taxed, char

Payment of
Taxes and
Assessments

-7-

WTTW 0000029

*A* 162

assessed, levied or imposed upon said demised land or upon any and all buildings and improvements at any time situated thereon, or which may be assessed, levied, or imposed upon the leasehold estate hereby created and upon the reversionary estate in said premises for any period during the term of this lease. It is understood, covenanted and agreed, however, that the aforementioned taxes, assessments, water rates, levies and other impositions agreed and required to be paid by the Lessee under the provisions of this paragraph during the term of this lease, shall be all thereof which are levied or assessed for each and every year after January 1, 1964 and up to and including December 31, 2061, when due and payable.

It is understood that Lessee is a tax-exempt educational associa-tion and that under existing law no such taxes should be assessed or collectable. This understanding, however, is not to affect the obligation of the Lessee to pay any and all water rates, taxes, assessments and levies, general and special, of every nature and kind that might be levied or assessed against the premises.

And it is further understood, covenanted and agreed by and betwe the parties hereto that all of said water rates, taxes, assessments other impositions and levies, hereby required to be paid by Lessee, shall be paid by said Lessee in any case within adequate time to pre any judgment, sale or forfeiture of said premises or any part thereo and within adequate time to prevent the appointment of a receiver fc non-payment of any of said taxes on said premises or any part therec

**Section 3.2**  Lessee further covenants and agrees to obtain anc

Delivery
of
Receipts
to Lessor

deliver to the Lessor at the place where the rent shall at such time be payable, and within sixty (60) days after such taxes, assessments and impositions have been paid, official original recei; or photostatic copies thereof of the payment of all said taxes and assessments and other impositions on said premises, required by the provisions of this lease to be paid by the Lessee.

-5-

WTTW 0000030

**Option of Lessor to Pay Unpaid Taxes, Etc.**

**Section 3.3** It is further covenanted and agreed that the Lessor shall, at its option, have the right at all times during the said demised term to pay any taxes, assessments, water rates, governmental and administrative fees, and other charges or impositions ~~whatsoever, inspection, inspection of this lease or thereof~~ upon or against such premises, or any part thereof, or interest therein, required by the provisions of this lease to be paid by the Lessee, remaining unpaid after the same shall have become due and payable; and that the Lessor shall have the further right to pay, cancel and clear off all tax sales, liens, charges and claims upon or against said premises, or any part thereof, and to redeem said premises from the same or any of them, from time to time, and that the amounts so paid, including reasonable expenses, shall, to the extent such amounts are required by the terms of this lease to be paid by the Lessee, be so much additional rent due from the Lessee at the next rent payment date after any such payment, with interest at the rate of seven per cent (7%) per annum from the date of the payment thereof by the Lessor until the repayment thereof to the Lessor by the Lessee.

**Right of Lessee to Protest Taxes, Etc.**

**Section 3.4** It is understood, however, that nothing herein contained shall be construed to impair or prejudice the rights of the Lessee in good faith to pay under protest, or contest to final judgment or decree in courts of last resort the payment of, any tax assessment, lien, imposition, levy or charge which may be levied imposed upon said premises or the leasehold estate created hereby otherwise and which are, by the terms of this lease, required to paid by the Lessee; provided, however, that said Lessee, prior to the date when said tax, assessment, lien, imposition, levy

-9-

WTTW 0000031

A164

or charge would be payable if not contested, gives notice in writing to the said Lessor of its intention to contest said tax, assessment, lien, imposition, levy or charge, and shall deposit with the Lessor, on Lessor's demand, cash or marketable securities satisfactory to the Lessor in an amount equal to the amount of such tax, assessment (to the extent of the first installment thereof), lien, imposition, levy or charge so contested, which security shall be held by the Lessor until said premises shall be relieved and discharged from any such tax, assessment, lien, imposition, levy or charge and shall thereupon be returned by the Lessor to the Lessee, less the amount of any loss, cost, damage and expense, including reasonable attorneys' fees, that the Lessor may sustain in connection with the tax, assessment, lien, imposition, levy or charge so contested, and it is agreed that pending any such legal proceedings the Lessor shall not have the right to pay, remove or discharge the tax, assessment, lien, imposition, levy or charge so contested; and, further, that pending any such legal proceedings the Lessee shall not be required to pay such contested tax, assessment, lien, imposition, levy or charge and shall be entitled to the income arising from securities deposited with the Lessor pursuant to this paragraph. Any refund of any such taxes, assessments, lien, imposition, levy or charge, shall be paid to and retained by the Lessee.

## ARTICLE FOUR

## Use and Care of Premises

Prohibits
Sale, Manu-
facture or
Storage of
Intoxica-
ting
Beverages

Section 4.1 As a further consideration for the leasing aforesaid, the Lessor and the Lessee hereby further covenant and agree that the Lessee shall use and occupy the demised premises

WTTW 0000032

A 165

for the sole purpose of carrying on the activities of Lessee as the owner and operator of educational television stations including creation of programs and administrative work in connection therewith ar the operation of a center for research and demonstration in new learning media including educational television. It is further agreed that no saloon or tavern may be established or operated on said demised land and that no intoxicating beverages may be sold, manufactured or stored on said demised land or in any building at any time situated thereon.

Section 4.2   As a further consideration for the leasing

Use in Compliance with Laws, Etc.

aforesaid, the Lessee hereby further covenants and agrees to and with the Lessor that, during the term of this lease, neither said demised land nor any building at any time situated thereon, nor any part or portion of such building, shall be used for any use or purpose in violation of the laws of the United States of America, the State of Illinois, the ordinances of the City of Chicago, including the zoning ordinance, or the rules or regulations of any other governmental body within whose territorial jurisdiction said premises lie, and that during said term said premises, and every part thereof, shall be kept by the Lessee in good repair and in a clean and wholesome, insurable and good tenantable condition; and generally that all health, building department and police regulation shall in all respects and at all times during said term be fully complied with by the Lessee; and also that the building and improvements at any time situated upon said demised land, and all sidewalks in front, at the sides, and in the rear thereof, shall during said term be kept by the Lessee at its own expense, safe, secure and conformable to the requirements of the City of Chicago and all othe public authorities; and further covenants that it will during said

-11-

WTTW 0000033

A166

term keep the Lessor harmless and indemnified at all times against any loss, damage, cost or expense by reason of failure so to do in any respect, or by reason of any accident, loss, or damage arising or resulting to person or property by reason of any use which may be made of the said premises, or by reason of any act or thing done or neglected to be done upon said premises, or the appurtenances thereto.

Additions, Changes, Improvements and Alterations Required by Lawful Authority

Section 4.3 The Lessee further covenants and agrees to make, at its own expense, all additions, improvements, alterations and repairs to any building and improvements at any time on said demised land, required by any lawful authority or made necessary by the act or neglect of any person or corporation, including any required strengthening of the foundations of any building or structure at any time situated on said demised land.

Indemnity of Lessor from Claims of Public Authorities

Section 4.4 The Lessee further covenants and agrees to and with the Lessor, that it will at all times during the term of this lease save the Lessor harmless from all claims by the said City of Chicago, or any other public authority or authorities, for compensation, rental or damages by reason of the use, occupation or intrusion upon any street or alley, or part thereof, adjoining said demised land, either upon, above, or under the surface thereof, by the Lessee, or anyone occupying said demised land, or any part thereof under the Lessee, or in connection with any structure or building at any time during the term of this lease situated upon said demised land, or any part thereof.

-12-

WTTW 0000034

A167

Indemnity
of Lessor
Re
Use

Section 4.5    The Lessee hereby covenants and agrees to
save and keep harmless the Lessor and the said premises and each
and every part thereof, at all times during the term of this lease,
from all damages, claims, fines, penalties, costs and expenses
whatsoever, that may result to the Lessor, to said demised land,
or to any improvement at any time situated thereon, under the
provisions of the present or any future statute or ordinance of
the City of Chicago or of the State of Illinois or of the United
States, or other lawful authority or authorities, on account of
any use or purpose for which said premises, or any part thereof,
may be used or occupied.

Upkeep of
Improve-
ments
o Liens

Section 4.6    The Lessee further covenants and agrees that it
will, at all times during the continuance of this lease, at its own
expense, keep all buildings and improvements at any time situated
on said demised land in good repair and condition and free and clear
of any and all liens of mechanics and material men, so that the
security afforded by said buildings and improvements for the rents
and agreements herein contained shall not at any time be impaired or
diminished in value, and also so that the buildings and improvements
at any time situated on said demised land can under the provisions
herein contained be surrendered up in good order and condition and
free and clear of mechanics lien claims, to the Lessor, upon the
termination of this lease by lapse of time, or forfeiture or otherwi

The Lessee further covenants and agrees that neither the Lessor
nor the demised land shall, during the term of this lease, be in any
way subject to any lawful claim for, and Lessee hereby agrees to
indemnify Lessor against any liability for, any damage to the

-13-

WTTW 0000035

A 168

owners of any adjoining property, by reason of the erection or demolition of any improvements upon said demised land, or by or on account of any work done or excavation made upon said demised land whether in connection with the erection of any improvements thereon or any other purposes. Neither the Lessor nor the premises shall be in any way subjected to any lawful claim for damages, or otherwise, by any person or individual or corporation whomsoever or whatsoever on account of any act or omission of the Lessee or of any person engaged by it, in connection with the erection of any building, or any other purpose, claimed by operation of law or by virtue of any expressed or implied contract of the Lessee, but any lawful lien or claim upon said premises arising from any act or omission of the Lessee shall accrue only against the leasehold interest of the Lessee, and shall be, in all respects, subject to the paramount title and rights of the Lessor in and to said demised land. Further, Lessee may contest the validity or applicability of any law, ordinance, rule, regulation or claim in any manner it may see fit so long as the premises do not thereby become subject to forfeiture, sale or seizure.

## ARTICLE FIVE

## Erection of Building

Time, Type and Minimum Cost

Section 5.1   As a further consideration for the leasing aforesaid, the Lessee hereby covenants and agrees that, within two (2) years after January 1, 1964, at its own cost and expense, the Lessee will erect, construct, build and fully complete a modern building on the said demised land. The over-all cost of the building and equipment will be not less than One Million Dollars ($1,000,000.00), which cost shall include architects' and

-14-

WTTW 0000036

A169

engineers' fees, costs of surety bonds and surveys, carrying charges during construction and related expenses of the Lessee.

The said building to be erected and constructed by the Lessee shall be designed by and constructed under the supervision of a competent and reliable architect or architects or construction engineer or engineers employed by the Lessee and shall conform to the requirements of all ordinances, laws and regulations then in force relating to such buildings and the erection, construction and equipment thereof, and shall be erected and constructed in accordance with the regulations of the various departments of the City of Chicago and the State of Illinois, and of all other governmental bodies or authorities, having jurisdiction in the premises, and if, in its erection and construction, any of such ordinances, laws or regulations shall be violated, such violation shall be promptly remedied. A permit or similar instrument, executed by any official of the City of Chicago, the State of Illinois, or any other governmental body or authority who would have jurisdiction to grant such permit or instrument if such building conforms to the requirements of ordinance, laws and regulations then in force relating to such building and the erection, construction and equipment thereof, shall, if such building is erected and constructed in accordance with such permit or instrument or as permitted thereby, be deemed conclusive evidence, for all purposes of this lease, that such building will be or has been erected and constructed in accordance with, and in conformity to, such ordinances, laws and regulations.

It is further understood and agreed that the said demised premises are leased subject to the terms of existing zoning

-15-                WTTW 0000037

ordinances and building restrictions, and that any amendment, change or variation therefrom that is required before the Lessee can use said demised premises for the purposes set forth in Section 4.1 of this lease shall be obtained by the Lessee. It is further understood and agreed that the Lessee has the responsibility of obtaining any such amendment, change or variation that is necessary at its own cost and expense.

**Deposit of Construction Completion Surety Bond**

Section 5.2    The Lessee further covenants and agrees that before commencing any work in the construction of the new building pursuant to the provisions of Section 5.1 of this Article Five, and before any contract incident to such construction, or any contract for work upon or material for the same shall be made or let, and as a condition precedent to any right to erect or construct such building or to make or to let any contract therefor, Lessee shall, and hereby covenants and agrees that it will deposit with the Lessor a surety construction completion bond (executed by a responsible surety company licensed to do business in the State of Illinois) in a sum equal to the estimated cost of construction of such new building.

Completion bond shall be held by the Lessor to secure:

    (a) the erection, construction, building and completion of said building by the Lessee in the manner and form herein stipulated free and clear of all liens or claims for materials or labor furnished in connection with such construction, and

    (b) the performance and observance by the Lessee of all the other covenants, agreements and

WTTW 0000038

A171

conditions of this lease on the part
of the Lessee to be kept and performed.

The cost of construction of such new building shall be
determined by the certificate of Lessee's Architect supervising
the same, which certificate shall be filed with the Lessor.

**Covenant
Against
Liens**

Section 5.3   Lessee expressly covenants and agrees that
it will pay promptly all costs, expenses and liabilities incurred
in the erection of said building so that the demised land and the
said building shall be free and clear of liens of mechanics and
material men and similar liens which might arise out of the
construction of said building provided, however, that Lessee shall
have the right, in its sole and uncontrolled discretion, to
contest the validity of any such claim for lien which may be
asserted.

## ARTICLE SIX

### Insurance

**Fire and
Extended
Coverage
Insurance**

Section 6.1   The Lessee further covenants and agrees with
the Lessor that it will at all times during the term hereby demised
and at its own expense, keep any building and improvements at any
time situated upon said demised land, insured against loss by fire
and lightning and other losses covered by "Extended Coverage
Insurance" which includes: Perils of Windstorm, Hail, Explosion,
Riot, Riot attending a strike, Civil Commotion, Aircraft, Vehicles
and Smoke, for not less than eighty percent (80%) of the full
insurable value exclusive of the foundation thereof, and if the

WTTW 0000039

A172

requirements of the local Board of Fire Underwriters, or its successors, shall be changed so as to require another and different percentage of insurance than eighty percent (80%) of the full insurable value of said premises in order to avoid liability of the insured as co-insurer in case of loss, then in such case, the Lessee shall be required under this lease to insure said improvements to such percentage of the insurable value of said premises as may be necessary to conform to said changed requirements, from time to time, of said Board, in companies authorized to do business in the State of Illinois, and that all policies of insurance shall provide for losses to be adjusted with Lessee and made payable to the Lessor and Lessee, as their interests may appear, and that all of the said policies of insurance shall be delivered to the Lessor and held by said Lessor as additional security for the covenants and agreements of the Lessee herein.

Nothing herein contained shall be construed as preventing the Lessee from taking out insurance for its own protection in addition to and in excess of the insurance required to be taken out and deposited by it as hereinbefore set forth.

Public
Liability
and Property
Damage
Insurance
and
Boiler
Insurance

Section 8.2   The Lessee further covenants and agrees that it will at all times during said term and at its own cost and expense, carry and maintain public liability and property damage insurance, in the sum of Three Hundred Thousand Dollars ($300,000), in the case of injury or damage to one person and One Million Dollars ($1,000,C in the case of injury or damage to more than one person in the same accident or occurrence, and property damage in the amount of One

-18-

WTTW 0000040

A173

Hundred Thousand Dollars ($100,000). Said policies shall be in insurance companies authorized to do business in the State of Illinois and shall insure the Lessor against liability for accident or damage in the demised land, sidewalks, entranceways and other portions of the building in the control or use of the Lessee. All said policies of insurance (or certificates that such policies are in force) shall be delivered to Lessor.

The Lessee further covenants and agrees that it will at all times during said term, after completion of the building provided herein, maintain at its own cost and expense a so-called "boiler insurance" policy or policies covering any and all boilers in any building at any time on said demised land, with limits of not less than Fifty Thousand Dollars ($50,000) in a company or companies authorized to do business in the State of Illinois and with losses to be adjusted with Lessee and made payable to the Lessor, the Lessee, as their respective interests may appear. Such policy (or a certificate that such policy is in force) shall be delivered to the Lessor.

**Insurance During Construc- tion of Building**

Section 6.3 While any new building or improvements required or authorized under the provisions of this lease shall be in the course of erection or construction, the Lessee shall and hereby agrees to procure, keep and maintain at its own cost and expense either (1) insurance thereon, conforming to all requirements aforesaid, so soon and as rapidly as such insurance is obtainable from good and responsible insurance companies and make the policies of insurance with losses to be adjusted with Lessee and Lessor and made payable to the Lessor and Lessee, as their interests may appe

-19-

A174

said policies to be delivered to the Lessor, or (2) an appropriate form of "builders' risk" policy with losses to be adjusted with Lessee and Lessor and made payable to the Lessor and Lessee, as their interests may appear, said policy to be delivered to Lessor.

**Lessor's Right to Secure Insurance**

Section 6.4 In case the Lessee shall at any time neglect to insure, or keep insured, the building and improvements on said demised land, as herein provided, or to procure the public liability and property damage and boiler insurance, and to deliver said insurance policies to the Lessor at least ten (10) days before the expiration of any then existing policies, the Lessor may, at its election procure or renew such insurance, and pay the premium therefor, and the amount or amounts so paid shall be additional rent hereunder immediately due and payable to the Lessor and shall bear interest at the rate of seven percent (7%) per annum from the time of payment by the Lessor until repayment to it.

It is further understood and agreed that the Lessor shall not be responsible for the collection or noncollection of any insurance money in any event in case of loss by fire or casualty, but only for such insurance money as shall come into the hands of said Lessor; and that said Lessor shall not be obligated to invest or place at interest any insurance money which may at any time be in its hands.

## ARTICLE SEVEN

### Removal of Buildings Erected by Lessee

**Restriction on Removal**

Section 7.1 The Lessee covenants and agrees that no build- ing hereafter standing upon said demised land shall be wholly or partly removed or torn down nor shall any alterations be made thereon which will diminish the value thereof, without the written conse

-20-

WTTW 0000042

A175

of the Lessor, except as hereunder otherwise expressly provided.

**Section 7.2**    The Lessee further covenants and agrees that

Waste    it will not commit, permit or suffer any waste of, upon, to or
about said demised land or in any building or improvements that may
be hereafter erected on said demised land, nor do or permit to be
done anything tending to injure the same or to impair or diminish
the value thereof; but this covenant shall not be taken to forbid
the removal by the Lessee, conformable to the provisions of this
lease, of any building, or section or unit thereof, hereafter con-
structed and standing upon the said land, for the purpose, and solely
for the purpose, of erecting and constructing in the place thereof
a new building, or section or unit thereof, in accordance with this
Article and conformable to the provisions thereof, such removal
for such purpose being hereby expressly permitted provided further
that the Lessee shall in respect thereof and precedent thereto,
have complied with all the covenants, requirements, and conditions
of this lease.

**Section 7.3**    The Lessee further covenants and agrees that

Minimum
Cost of    upon the tearing down and removal of said building, or section or
Building
To Re-    units thereof, it will proceed with all diligence and dispatch to
place
Removed    replace the same and will erect, construct and complete a new,
Building.
Time of    modern, commercial building, or unit or section thereof, to cost
Completion
not less than the then value of the building or part thereof to be
removed. Prior to any tearing down and removal, the then
value of the building or part thereof to be removed shall be
set forth in a certificate of the architect or engineer
employed by the Lessee to supervise such new construction which
shall be delivered to the Lessor at least sixty (60) days
before the removal shall be commenced and shall be finally
determinative of such value, unless the Lessor shall, within

-21-

WTTW 0000043

A176

thirty (30) days after receipt of such certificate, notify the Lessee of exception thereto, specifying a value which would be acceptable to the Lessor; and in the event the parties are unable to agree on a compromise value within ten (10) days thereafter, such value shall be determined by appraisers who shall be appointed and proceed in all respects as the appraisers provided for in Section 2.2 for the purpose of determining, the then value of the building or part thereof to be removed. Such building, or section or unit thereof, shall be entirely completed and free from all liens and from all claims liable to be enforced by means of liens, with all reasonable dispatch and in any event within twelve (12) months after the removal of the old building or section or unit thereof, shall have begun.

Said new building or section or unit thereof, as well as every future building or section or unit thereof, that may at any time thereafter be erected or constructed upon said demised land, pursuant to the authority or requirements of, or under any of the provisions of this lease, shall be modern at the time in its character, equipment and appointments, and complete with all of t then usual appliances and conveniences for such structure, and shall conform to the requirements of all ordinances, laws and regulations then in force relating to such buildings and the erection, construction and equipment of the same, and in accords with the regulations of the various departments of the City of Chicago and of the State of Illinois and all other governmental bodies or authorities having jurisdiction in the premises, and in its erection and construction none of such ordinances, laws regulations shall be violated.

WTTW 0000044

A177

Deposit of
Surety
Bond

<u>Section 7.4</u>   And the Lessee does further covenant and agree that before the removal of any building, or section or unit thereof, upon said demised land shall be begun, and as a condition precedent thereto, and before the erection and construction at any time of any new building or section or unit thereof (as a replacement for any then existing building or section or unit of such existing building required subject to the provisions of Article Five by this lease to be maintained upon said land) shall be commenced, and before any contract for the construction thereof or for work upon or material for the same shall be made or let, the Lessee, shall and hereby covenants and agrees that it will deposit with Lessor a surety completion bond, signed by a responsible surety company licensed to do business in the State of Illinois, in a sum equal to the cost of construction of the section or unit or the new building which Lessee then propos to construct, primarily to secure the erection, construction and completion by the Lessee in the manner and form and within the tim hereinbefore stipulated, of such new building or section or unit, and secondarily, as security for the performance and observance by the Lessee of all the other covenants and conditions of this lease on the part of the Lessee to be kept and performed during the period of such removal and construction.

The cost of construction of such new building or section or unit shall be determined by the certificate of Lessee's architect supervising the same, which certificate shall be filed with the Lessor.

-23-

WTTW 0000045

A178

ARTICLE EIGHT

Rebuilding in Case of Fire

Section 8.1   The Lessee further covenants and agrees that
subject to the provisions of this Section 8.1, if, at any time or
times during the term of this lease, any building or improvement,
which has been constructed after the date of this lease upon the
demised land, or any part of such building or improvement, shall
be damaged, injured or destroyed by fire or other casualty or in any
manner whatsoever, the Lessee shall and will, at its own cost and
expense, repair, restore and rebuild the same, on the same general
plans, dimensions and character as before such damage, injury or
destruction, or construct a new building or improvements on said
demised land of the kind and character permitted by Article Five
of this lease, and subject to the terms and conditions set forth
in this lease, so that after such repair, restoration or new con-
struction, the value of the building and improvements shall be at
least as great as before such damage.  The Lessee, however, shall
not be required to make any deposit of a surety bond, in the event
of the erection of a new building or improvements under the provisi○
of this Section 8.1, but said building or improvements shall in all
other respects conform to all the requirements of said Article Five
and be erected, constructed and completed by the Lessee in the
same manner and under the same conditions and provisions as any new
building, or section or unit thereof, permitted to be erected by
said Article Five, and the Lessee further covenants and agrees that
it will repair, restore and rebuild, as aforesaid, the said
building or improvements so damaged, injured or destroyed, with
all reasonable dispatch and diligence, and will have the same

-24-

WTTW 0000046

A179

completely repaired, rebuilt, restored and ready for occupancy within twelve (12) months from the time of such loss, damage, injury or destruction and will pay therefor, so that said demised land and the building situated thereon shall be free and clear of all mechanic's and materialmen's and similar liens arising out of such repairing, restoration or construction, and will, in respect to such work, construction, reconstruction, building and rebuilding, and the prerequisites therefor, and the nature, character and progress thereof, and method and manner of doing and completing the same, conform to all the requirements of Article Five of this lease (other than the obligation to deposit a surety bond), which said requirements shall extend and be construed applicable to any such repair, restoration, construction, reconstruction, building or rebuilding and shall with respect thereto bind and be obligatory upon the Lessee.

## ARTICLE NINE

### Application of Insurance Money

Section 9.1   It is further covenanted and agreed that, if

Where Building
is Re-
paired or
Rebuilt
as Speci-
fied

the Lessee, in case of damage to any building or improvement at any time upon said demised land, or the destruction thereof, shall commence to repair or rebuild the same or construct a new building or improvement on said demised land in conformity with the requirements of this lease and within the time herein specified, then and in such case all Insurance moneys which shall be received by the Lessor and Lessee, under the provisions of this lease, shall be paid to the Lessor in trust, as a trust fund, and shall be paid c

-25-

WTTW 0000047

A180

by Lessor from time to time upon certificates of the Lessee's architect, for the expense of such repairing, restoring or rebuilding or the construction of a new building or improvement, but an amount of such insurance money shall at all times be retained by the Lessor, which shall be sufficient to pay for the completion of the repair, restoration, or rebuilding thereof, or the construction of a new building or improvement, in conformity with the requirements of this lease. Upon completion of said repair, restoration or rebuilding, or of the construction of such new building or improvement, discharged of all liens of mechanics or materialmen, any surplus of insurance money remaining in the hands of the Lessor shall be paid to the Lessee. The cost of such repairs, restoration, rebuilding or construction of a new building or improvement, and the question of the amount at any time required to pay for completion of such repair, restoration or rebuilding an whether the same has been paid for and completed free and clear of all such liens shall, for all purposes of this lease be determined by the certificate of Lessee's architect supervising the same, which certificate shall be filed with the Lessor.

Where
Building
is Not
Repaired
or
Rebuilt
as
Specified

Section 3.2   It is further covenanted and agreed that in the event that any building on said demised land shall not be rebuilt restored, repaired, or a new building or improvement shall not be constructed on said demised land in place thereof, in the manner and within the time in this lease specified, then and in such cas all insurance money in the hands of the Lessor, in trust, shall become the property of the Lessor and be transferred to the Lesse and the Lessor shall be discharged and released from any claim o demand of the Lessee or any person claiming under the Lessee on

-26-

WTTW 0000048

account of the payment of such insurance moneys to the Lessor.

## ARTICLE TEN

### Registration of Place and Person for Serving Notices

Section 10.1   The address now designated by the Lessor for the receipt of any declaration, demand or notice to be given under and pursuant to the provisions of this lease is 228 North La Salle Street, Chicago 1, Illinois, and the address now designated by the Lessee for like purpose is 1761 East Museum Drive, Chicago 37, Illinois.  The persons now designated to receive such declaration, demand or notice for the Lessor shall be its controller or his successor, and for the Lessee, John W. Taylor, Executive Director.

The Lessor or Lessee may from time to time change the name and address so furnished under the provisions of this Article, by giving written notice of said change to the Lessor or Lessee (as the case may be) at the place for the giving of notices as hereinabove provided.

## ARTICLE ELEVEN

### Manner of Serving Notice

Section 11.1   In every case where under any of the provisions of this lease, or in the opinion of either the Lessor or Lessee or otherwise, it shall or may become necessary or desirable to make, give or serve any declaration, demand or notice of any kind or character, or for any purpose whatsoever or to deliver any copies of instruments of assignment or documents of any kind, it shall be sufficient:

WTTW 0000049

A182



Either (1) to deliver, or cause to be delivered, a copy of any such declaration, demand, copy or notice to the Lessor or to the Lessee, as the case may be, by serving the same upon the party designated to receive such demand or notice as in Article Ten hereof is provided; and/or

(2) to send, or cause to be sent a copy of such declaration, demand, copy or notice by registered mail (postage prepaid) properly addressed to the Lessor or the Lessee (as the case may be) upon the person and at such address as the parties hereto may have theretofore furnished to the other party in writing for the declared and express purpose of receiving notices. All declaration or notices to or demands upon the Lessor or Lessee are hereby required to be in writing; and in any case the declaration, demand or notice, or copy thereof, may be signed and made, given or served, in person or by an agent, attorney or servant.

And in each and every case such service, in any of the modes above provided, of any declaration, demand or notice shall be sufficient and be held effectual for all purposes, and no other or further declaration, demand or notice or method or manner of giving, serving or delivering the same shall be required.

## ARTICLE TWELVE

### Assignment of Lease

Section 12.1 It is expressly covenanted and agreed by and

Lessee may
Assign
With
Consent
of
Lessor

between the Lessee and the Lessor that the Lessee shall not assig transfer, set over or convey, in whole or in part, or otherwise, by any act or deed, cause to be assigned, transferred, set over or conveyed, in whole or in part, its interest and estate in sai

-28-

WTTW 0000050

A183

demised land, or any part thereof, or the building or improvements situated thereon or in this lease, to any assignee whatsoever, without the written consent of the Lessor first had and obtained thereto by resolution duly adopted at a regular meeting of said Lessor. Such consent if granted shall expressly provide that Lessee and its assigns shall not be released from any of the terms, covenants, or obligations (including the covenants to erect a building and to pay rent) in this lease contained, to be kept, observed and performed and the assignee of the Lessee and any subsequent assignee shall be subject to the same terms and conditions as to future assignments and to all the covenants, agreements, provisions and conditions contained in this lease. In case of any such sale, assignment or conveyance by the Lessee or its assigns, with the written consent of the Lessor, the same shall be evidenced by an assignment in writing duly executed under seal, and acknowledged by the assignee or assignees and duly recorded in the Recorder's Office of Cook County, Illinois wherei and whereby such assignee or assignees shall expressly accept and assume all of the terms and covenants in this lease contained to be kept, observed and performed by the Lessee, and become bound t comply therewith, a duplicate of which instrument, duly executed, shall be delivered to the Lessor, together with the business and residence address of the assignee in such assignments and the nur and address of the person or corporation to receive notices under Article Ten hereof, within thirty (30) days after the date of the delivery of the assignment by the Lessee to the assignee.

-29-

WTTW 0000051

A184

## ARTICLE THIRTEEN

### Re-Entry Upon Default

**Section 13.1**  The Lessee further covenants and agrees to and with the Lessor that if default shall at any time be made by the Lessee in the payment of the rent or any part thereof when due as herein provided, and such default shall continue for thirty (30) days after notice in writing thereof to the Lessee, or if default shall be made in any of the other covenants, agreements, conditions or undertakings herein contained to be kept, observed and performe by the Lessee, including the erection of a building as provided in Article Five of this lease, and such default shall continue sixty (60) days after notice thereof in writing to the Lessee, it shall and may be lawful for the Lessor, at its election, to declare the said term ended and the said demised land, and all buildings then situated thereon, or any part thereof, either with without process of law, to re-enter, and the Lessee and every other person occupying, in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the said demised land and all buildings then situated thereon again to repossess and enjoy as in its first and former estate.

**Section 13.2**  The Lessee hereby waives any demand for the possession of said premises, other than the written notice of default hereinbefore provided for, in the event of the forfeiture of this lease and agrees that the written notice of default herein before provided for may be given as provided in Article eleven.

## ARTICLE FOURTEEN

### Indemnity of Lessor

**Section 14.1**  The Lessee further covenants and agrees to and with the Lessor that in case the Lessor shall on account of

-10-

WTTW 0000052

A185

this lease and without any fault on its part, be made party
to any litigation commenced by or against the Lessee, or
against any parties in possession of said premises or any part
thereof, claiming under the Lessee, then the Lessee shall and
will pay all costs and attorney's fees incurred or paid by or
imposed on the Lessor by or in connection with such litigation,
and the Lessee shall and will also pay all costs and attorney's
fees which may be incurred or paid by the Lessor in enforcing
the covenants and agreements of this lease, and all such costs
and attorney's fees when paid by the Lessor shall become at once
a first and valid lien upon the building and improvements on said
demised land and upon the leasehold estate hereby created, and
may be taxed as costs, if involved or in any way growing out of
any suit or proceeding as aforesaid.

### ARTICLE FIFTEEN

#### Lien of Rent

Section 15.1    It is further covenanted and agreed by and
between the parties hereto that the whole amount of the rent
reserved and hereby agreed to be paid, and each and every install
ment thereof, and the amount of all taxes, assessments, water
rates and insurance paid by the Lessor under the provisions of
this lease, and all costs, reasonable attorney's fees and expense
which may be incurred by the Lessor in enforcing the provisions
this lease or on account of any default by the Lessee in carrying
out any of the provisions of this lease, shall be and they are
hereby declared to be a valid and first lien upon any and all
buildings and improvements standing or which may be erected or

-31-

WTTW 0000053

placed upon the said demised land, and upon the interest of the Lessee and its assigns in this lease and in the premises hereby demised.

## ARTICLE SIXTEEN

### Covenant Against Liens

Section 16.1    It is expressly covenanted and agreed by and between the parties hereto that nothing in this lease contained shall authorize the Lessee to do any act which shall in any way incumber the title of the Lessor in and to said premises, nor shall the interest or estate of the Lessor therein be in any way subject to any claim by way of lien or incumbrance, whether claimed by operation of law, or by virtue of any express or implied contract by the Lessee, and any claim to a lien upon said premises arising from any act or omission of the Lessee shall accrue only against the leasehold estate of the Lessee, and shall in all respects be subjec to the paramount title and rights of the Lessor in and to said premises.

The Lessee hereby expressly covenants and agrees that the Lessee will not enter into any contract with any person, firm or corporati for labor, services or material in connection with any building or improvement to be placed upon said land or to be rebuilt thereon which contract involves an amount in excess of Twenty-five Hundred Dollars ($2,500.00) unless it shall be stipulated in and be a condition of such contract that no lien shall arise or be claimed on account of such contract or on account of any work done or services or material furnished under said contract as against the title or interest of the Lessor in said premises, and unless it

-32-

WTTW 0000054

A 187

shall be stipulated and agreed in such contract that such person, firm or corporation entering into such contract shall by the terms thereof waive any and all right of or claim to a lien upon the said premises so far as the Lessor's interest therein is concerned and that any lien which may arise or be claimed under such contract shall attach only to the leasehold interest of the Lessee in said premises; and the Lessee covenants and agrees that it will cause waivers of liens as against the interest of the Lessor in said premises to be duly executed by any person, firm or corporation furnishing labor, services or material in or about the erection, remodeling or rebuilding of any such building and will cause such waivers of liens to be furnished to the Lessor as soon as any such person, firm or corporation shall respectively enter upon the performance of such work, or the furnishing of such material or services in all cases where in the absence of such waiver such person, firm or corporation might claim a lien upon the interest of the Lessor in said premises.

## ARTICLE SEVENTEEN

### Interest Upon Arrears

Section 17.1  It is further covenanted and agreed that each and every installment of rent accruing under the covenants of this lease, which shall not be paid when due, shall bear interest at the rate of seven percent (7%) per annum from the day when the same is payable under the terms of this lease, until the same shall be paid and all other sums becoming due or payable to the Lessor under this lease, including all moneys expended by the Lessor and required to be reimbursed to the Lessor by the Lessee, pursuant

WTTW 0000055

A188

to the provisions of this lease or on account of any default by the Lessee in the performance of observance of any of the covenants of this lease, shall in like manner bear interest from the respective dates when the same shall be advanced or paid by the Lessor at the rate of seven percent (7%) per annum until the same shall be repaid by the Lessee to the Lessor, and all sums so advanced or paid by the Lessor shall become additional rent under the terms of this lease and shall become due and payable with the installment of rent falling due under the terms of this lease next after the date of the advance or payment of said sum by the Lessor.

### ARTICLE EIGHTEEN

#### Surrender Upon Termination

Section 18.1    The Lessee covenants and agrees to and with the Lessor that, upon the termination of this lease by forfeiture or lapse of time, the Lessee shall at once surrender and deliver up to the Lessor said demised land, together with all buildings and improvements then standing upon said demised land, and such building and improvements shall then belong to the Lessor, and no compensation shall be allowed or paid to the Lessee therefor.

### ARTICLE NINETEEN

#### Remedies Cumulative - Waiver Not To Be Inferred

Section 19.1    No remedy herein or otherwise conferred upon, or reserved to, the Lessor shall be considered exclusive of any other remedy, but the same shall be cumulative and shall be in addition to every other remedy given hereunder or now, or hereafter existing at law, or in equity or by statute; and every power and remedy given by this lease to the Lessor may

-34-

WTTW 0000056

A189

be exercised from time to time and as often as occasion may arise or as may be deemed expedient. No delay or omission of the Lessor to exercise any right or power arising from any default shall impair any such right, or power, or shall be construed to be a waiver of any such default, or an acquiescence therein.

No waiver of any breach of any of the covenants of this lease shall be construed, taken or held to be a waiver of any other breach, or waiver of, or acquiescence in or consent to any further or succeeding breach of the same covenant.

Neither the rights herein given to receive, collect, sue for or distrain for any rent or rents,moneys, or payments or to enforce any of the terms, provisions and conditions of this lease, or to prevent the breach or non-observance thereof, nor the exercise of any such right, or of any other right or remedy hereunder, or otherwise granted or arising, shall in any way affect or impair the right or power of the Lessor to declare the term hereby granted ended, and to terminate this lease, as herein provided in Article Thirteen, because of any default in, or breach of any of the covenants, provisions or conditions of this lease.

It is further covenanted and agreed that none of the covenant terms or conditions of this lease to be kept, observed or performed by the Lessee, shall in any manner, be altered, waived, modified or changed or abandoned, except by a written instrument duly signed, acknowledged and delivered by the Lessor pursuant to resolution adopted by the governing body of the Lessor, and not otherwise, and no act or acts, omission or omissions or series of acts or omissions, or waiver, acquiescence or forgiveness by the Lessor as to any failure of performance, either in whole or in pa

WTTW 0000057

A190

of the Lessee, of any of the covenants, terms or conditions of this lease, shall be deemed or construed to be a waiver by the Lessor of the right at all times in the future to insist upon the full and complete performance by the Lessee of each and all the foregoing covenants, terms and conditions thereafter to be performed according to the provisions of this lease in the same manner and to the same extent as the same are above covenanted to be performed by the Lessee.

In case the Lessor shall have proceeded to enforce any right under this lease by entry, suit or otherwise, and such proceeding shall have been discontinued or abandoned because of a waiver, settlement or for any other reason (or shall have been determined adversely to the Lessor), then and in every such case except as the same may have been changed by any court adjudication, the Lessor shall be restored to its former position and rights hereunder in respect of said premises, and all rights, remedies and powers of the Lessor shall continue as though no such proceeding had been taken.

## ARTICLE TWENTY

### Covenants to Run with the Land

Section 20.1   It is further covenanted and agreed by and between the parties hereto that all the covenants, agreements, conditions and undertakings in this lease contained shall extend to and be binding upon the successors, legal representatives and assigns of the respective parties hereto the same as if they were every case named and expressed, and the same shall be construed as covenants running with the land, and wherever in this lease reference is made to either of the parties hereto it shall be

WTTW 0000058

A191

held to also include and apply to wherever and whenever applicable,
the successors, legal representatives and assigns of such parties
the same as if in each and every case so expressed.

ARTICLE TWENTY-ONE

Definition of Terms

Section 21.1  As used in this lease, the term "demised land"
means the real estate and rights, privileges, easements, appurtenances
and interests attaching or belonging to, or in, to or in connection
with, the real property hereinabove demised and leased, exclusive
of buildings and other structures (with their equipment and
appurtenances) from time to time thereon.  The term "improvements"
(when not used in conjunction with the words "building" or "buildings"
means the building or buildings and other structures (with their
fixtures and appurtenances) from time to time located on the demised
land.  The term "premises" means the demised land and the improvement

WITNESS the due execution hereof, as of the day and year first
above written.

                             BOARD OF EDUCATION OF THE CITY OF CHICAGO

                             By_____President

                             Attest:_____Secretary

Board Report No. 71754
Adopted November 27, 1963

                           CHICAGO EDUCATIONAL TELEVISION ASSOCIATION

                           By_____President

                           Attest:_____Secretary

Approved as to Legal Form:
_____
Attorney for the Board of Education
of the City of Chicago

Approved
_____
Acting Controller

WTTW 0000059

A 192

STATE OF ILLINOIS )
                ) SS
COUNTY OF C O O K )

    I, _JOSEPH A MURPHY_, a Notary Public, in and for said State and County, do hereby certify that CLAIR M. RODDEWIG, President of the BOARD OF EDUCATION OF THE CITY OF CHICAGO, and H. H. BUCK, Secretary of said Board, personally known to me to be the same persons whose names are subscribed to the foregoing instrument as such President and Secretary, respectively, appeared before me this day in person and acknowledged that they signed, sealed, (with the corporate seal of said Board) acknowledged and delivered the said instrument as their free and voluntary acts as such President and Secretary, respectively, and as the free and voluntary act of said BOARD OF EDUCATION OF THE CITY OF CHICAGO, for the uses and purposes therein set forth, pursuant to the affirmative vote of not less than two-thirds (2/3rds) of the full membership of said Board of Education of the City of Chicago.

    GIVEN under my hand and Notarial Seal this 22nd day of _APRIL_, 1965.

                                          _____
                                            Notary Public

My commission expires___June 10 1965_____

WTTW 0000060

STATE OF ILLINOIS )
                  ) SS
COUNTY OF C O O K )

    I,_____Duane M. Weise_____, a Notary Publi
in and for said State and County, do hereby certify that Edward L.
Ryerson and Robert L. Foote, personally known to me to be the same
persons whose names are subscribed to the foregoing instrument and
personally known to me to be the duly elected and qualified Presiden
and Secretary respectively of CHICAGO EDUCATIONAL TELEVISION ASSOCIA
TION, an Illinois not-for-profit corporation, appeared before me
this day in person and acknowledged that they signed, sealed,
acknowledged and delivered the said instrument as, and that same was
their free and voluntary act and deed as such President and Secretar
respectively, and as, and that the same was, the free and voluntary
act and deed of the said corporation, for the uses and purposes
therein set forth, and that the seal affixed to said instrument was
and is the common and corporate seal of said corporation, that said
seal was duly affixed by authority of its Board of Directors and
that the signing, sealing, acknowledgment and delivery of said
instrument was duly authorized by resolution of the Board of
Directors of said corporation.

    GIVEN under my hand and Notarial Seal this _____ day of
_____, 1955.

                       _____
                             Notary Public

My commission expires_____7 _ _ _ 4 / '55_____



I, Robert L. Foote, Secretary of Chicago Educational Television Association, an Illinois not-for-profit corporation, do hereby certify that at a meeting of the Board of Directors of said corporation, duly called and held on ___December 12, 1963___, the following resolution was unanimously adopted:

"Resolved, that the officers of Chicago Educational Television Association, an Illinois not-for-profit corporation, be, and they are hereby authorized, empowered and directed to enter into a lease agreement with the Board of Education of the City of Chicago, and to duly execute a lease dated November 27, 1963, covering the following described property to-wit:

> That part of Lot 13 in the Subdivision of the North half of Section 11, Township 40 North, Range 13 East of the Third Principal Meridian, which lies south of a line which is 1100.00 feet south of and parallel with the South line of West Bryn Mawr Avenue, which property has a frontage of 195.94 feet on the West side of North St. Louis Avenue opposite the intersection with West Balmoral Avenue having an average depth of 628.36 feet, containing approximately 123,121 square feet.

for a term commencing January 1, 1964 and ending December 31, 2061.

I further certify that at said meeting a quorum of said Board was present and that the foregoing resolution has been duly engrossed on the permanent records of the corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the corporation, this ___/ ᵗᵉ___ day of ___December___, 1963.

Chicago Educational Television Association, a not-for-profit corporation

By _____
          Secretary

WTTW 0000062



A195